## C. W. MOORE, RESPONDENT, *v.* J. B. TAYLOR, APPELLANT.

JUDGMENTS—POWER OF COURT OVER DURING TERM.—Courts have full power during the term to alter, revise, revoke, annul, or amend their judgments and all other proceedings, and the rights of parties can not be considered as fully settled, until the judgments pass beyond the control of the court.

CONSTRUCTION OF JUDGMENTS.—In passing upon the meaning and effect of their judgments, courts sometimes look behind them to see upon what they are founded, and the intention of courts is to be deduced from every part of the judgment and the proceedings leading thereto; and when the intention is accurately ascertained, it will always prevail over mere words. Hence, although the word "reversed" is used in a judgment of this court, yet if it can be ascertained from its whole scope that it was only the intention to modify, and not vacate the judgment of the court below, it will be considered as an affirmance of such judgment, as modified.

APPEAL from the district court of the second judicial district, Ada county.

*Smith & Kelly and J. W. Huston,* for the appellant.

*H. E. Prickett and Brumback & Cahalan,* for the respondent.

HOLLISTER, C. J., delivered the opinion. CLARK, J., concurred.

The facts of the case so far as they have any important bearing upon the question under consideration, are as follows: On the eighth day of January, 1872, one O. W. Peterson and wife, who were then the owners of the property, executed to James Griffin a mortgage upon the undivided one half of lots 5, 6, and 10 in block 2, in Boise city, and certain personal property, to secure the payment of a promissory note given by Peterson to Griffin for the sum of three thousand dollars in gold. Upon default of

the payment of the note according to its terms, a suit was commenced in the district court of Ada county against the mortgagors by Griffin, in which the appellant as a subsequent incumbrancer was also made a party defendant, upon the hearing of which a decree was entered by said court on the twelfth day of April, 1873, that the property described in the mortgage, or so much thereof as should be sufficient to raise the amount due to Griffin for principal, interest, counsel fees, and costs, be sold by the sheriff of Ada county.

It further appears that in pursuance of such decree the sheriff offered the property for sale at public auction on the thirty-first day of May, 1873, that the appellant bid for the undivided half of lots 5 and 6 in block 2, the sum of two thousand seven hundred and twenty-five dollars in gold coin, and for the undivided half of lot 10, the sum of one hundred dollars in gold coin, and for the personal property, the sum of seven hundred dollars in gold coin, making in the aggregate the sum of three thousand five hundred and twenty-five dollars, for which sum the whole of said property was struck off to him, and that on the same day, the sheriff executed to him a deed for the real estate so sold. It also appears that the appellant obtained a judgment in the Boise county district court against the said O. W. Peterson on the third day of August, 1872, for the sum of six thousand three hundred and twenty-three dollars and ninety cents, and on the fifth day of the same month, filed a transcript thereof in the recorder's office of Ada county, and that the same was recorded in the books of the office, but by a mistake of the recorder the judgment was recorded as against D. W. Peterson instead of O. W. Peterson.

From this judgment Peterson took an appeal to this court, and on the hearing, by an order of this court made and entered on the fifteenth day of February, 1873, the same was reversed. On petition by the appellant for a rehearing the case was heard again, and on the twenty-sixth day of February, and during the same term, the judgment of the district court was modified so as to reduce the amount of the judgment in the district court some eight hundred dollars.

Immediately on the rendering of the judgment of the

court on the fifteenth day of February, 1873, to wit, on the same day, Peterson and wife executed to the respondent a mortgage upon the real estate in question to secure the payment of a promissory note of the same date, executed by Peterson to respondent, for the sum of one thousand seven hundred and fourteen dollars and sixty-eight cents in gold coin, payable in six months after the date thereof. The record shows that Peterson was in default in the payment of the note, and that on the twenty-ninth day of October, 1873, respondent filed his complaint in the district court of Ada county against appellant for the foreclosure of his 'mortgage and the redemption of the real estate mentioned, from the sale to appellant under the Griffin mortgage.

To this complaint an answer was put in alleging, among other things, that if the respondent is entitled to redeem the premises from the appellant, it is only on condition that he pay not only the amount for which the same were sold to him, but in addition the full amount of his judgment against the said Peterson, as modified by the judgment of the supreme court entered on the twenty-sixth day of February, 1873; the same being a prior lien upon the same, as he alleged.

On the fourteenth day of February, 1874, the court entered a decree that the judgment of appellant against Peterson created a lien upon the real estate, subsequent or junior to the mortgage incumbrance of the respondent, and that the respondent should be entitled to redeem from the sale under the Griffin mortgage, by the payment to appellant of the sum for which the premises were sold to him, with interest, etc.

There are several errors assigned by the appellant as grounds on which he claims a reversal of the decree of the district court; but, in the view we take of the case, it is only necessary to notice but one, and that is, whether the decree declaring the mortgage of respondent prior in point of time and superior in equity as a lien to that of the judgment of the appellant, was erroneous or not.

There are two reasons urged by the counsel for the respondent in support of the decree, which it is deemed im-

portant to consider, as upon their validity the case must turn. They are as follows: 1. That the recording of the transcript of the judgment obtained by the respondent against Peterson, in the Boise county district court, in the recorder's office of Ada county, as against D. W. Peterson instead of O. W. Peterson, did not create a lien upon the real estate in question. 2. That the judgments of the supreme court of the fifteenth and twenty-sixth of February, referred to, had the effect to let in the mortgage of respondent as a prior incumbrance upon the property.

In disposing of the first point, it is only necessary to consider the statute upon the subject, and its application to this branch of the case. After prescribing, in sections 207 and 208 of the civil practice act of the second session, the mode in which docket entries of judgment shall be made, it is provided, in section 210, "that a transcript of the original docket, certified by the clerk, may be filed with the recorder of any other county, and from the time of filing, the judgment shall become a lien upon all the real property of the judgment debtor, not exempt from execution, in such county, owned by him at the time, or which he may afterwards acquire, until the said lien expires. The lien shall continue for two years, unless the judgment be previously satisfied." It will be seen from this provision that it is not necessary, in order to create a lien upon the real estate of the judgment debtor, that the certified transcript of the original docket should be recorded; and hence, whether it be recorded or not, it can not affect the lien one way or another. If the proper transcript be filed with the recorder, it is sufficient to make the lien good for the time prescribed in the statute.

The proof in this case shows that the proper transcript was filed with the recorder, but in transcribing it upon the records of the office he made the clerical mistake in the initial letter of the Christian name of the judgment debtor. As the lien was created by the filing of the transcript with the recorder, any error of his in recording it could not have the effect contended for by appellant's counsel. The other reason, that the two judgments of this court on the fifteenth

and twenty-sixth days of February, 1873, had the effect to postpone appellant's judgment lien upon the property in question, so as to give priority to respondent's mortgage, has received our most careful consideration, and though the arguments in support of it have been able and exhaustive, yet we have been unable to yield our assent to the reasons urged, or to uphold the decree of the district court in favor of the respondent.

Upon the first hearing of the appeal in the case of *Peterson* v. *Taylor*, a majority of the court were of the opinion that the judgment of the district court should be reversed, and that the cause should be remanded for a new trial. This decision was rendered on the fifteenth of February, but on petition of Taylor a rehearing was ordered on the twenty-first day of the same month, a part of which order is as follows: "And until a rehearing and decision are had upon the question, that all further proceedings in the case be stayed," and on the twenty-sixth day, the record entry of the proceedings of the court was made as follows:

"Now on this day the decision of the court was announced thereon, that the order heretofore entered in this case, reversing the judgment and remanding the case to the court below, be vacated, and that the respondent J. B. Taylor have judgment herein for five thousand and thirty-eight dollars and sixteen cents, together with interest on that sum from the date of the judgment of the district court, to wit, the third day of August, 1872, making in the aggregate the sum of five thousand three hundred and twenty-two dollars and fourteen cents.

"Whereupon it is now considered, ordered, adjudged, and decreed by the court here, that the order and judgment heretofore entered in this case, reversing the judgment and remanding the case to the court below, be, and the same is, hereby vacated and set aside. It is further ordered, adjudged, and decreed that the judgment of the court below be, and the same is, hereby reversed, and that the said J. B. Taylor, respondent, do have judgment against O. W. Peterson, appellant, for the sum of five thousand three hundred and twenty-two dollars and fourteen cents. It is

further ordered and adjudged that the order refusing a new trial be, and the same is, hereby affirmed, and that the respondent J. B. Taylor do pay the costs of this proceeding."

The doctrine, that during the term of a court "the proceedings remain in the breast of the judges, and that not only the records during that time are subject to the revision of the court, but the judgment itself may be altered, revised, revoked, as well as amended, in respect to clerical errors and matters of form," has not been disputed, nor can it well be, for it has been acted upon by the courts of England and of this country since the time of Lord Coke, and it is so well settled as to become a rule of action in both countries, which can not now be overturned. Proceedings during the term are considered only *in fieri*, and subject to the control of the courts, and no rights can be considered as fully settled and determined until they pass beyond the control of the court by the adjournment of the term. It follows, therefore, that Taylor did not lose the benefit of his judgment against Peterson in the court below, nor of his lien under it, by the order of reversal entered on the fifteenth of February. Until the final adjudication of the case his rights under the judgment were only suspended, not destroyed, and hence, his lien could not be cut out or superseded by the mortgage given by Peterson to the appellant. In taking the mortgage the respondent took it with full notice of Taylor's rights under this principle of law and in subordination thereto. He was not, in contemplation of law, a *bona fide* prior incumbrancer, so far as Taylor's rights were concerned.

In considering the effect of the judgment of this court on the twenty-sixth of February upon the question before us, our attention has been directed to the principle that courts, in construing the meaning and effect of their judgments, are governed by the same general principles as in the construction of statutes. It is said in Freeman on Judgments, p. 180, sec. 215, that "courts, in order to give a proper and just effect to a judgment, sometimes look behind to see upon what it is founded, just as they would, in construing a statute, seek to ascertain the occasion and purpose of its enactment." This principle, thus enunciated as a rule

of interpretation, has reference, primarily to judgments founded upon causes of action in courts of original jurisdiction; still, in our view, it is equally applicable to judgments entered in appellate courts, and serves to interpret their meaning and to give them effect, the same as in other courts.

The same principle is applicable in the exposition of wills. Sir William Blackstone, in his Commentaries, book 1, page 59, observes, "that the fairest and most rational method to interpret the will of the legislator is by exploring his intentions at the time the law was made, by signs the most natural and probable, and these signs are either the words, the context, the subject-matter, the effects and consequences, or the spirit and reason of the law." The learned Chancellor Kent, in volume 1, marginal page 462, of his Commentaries, says: "It is an established rule in the exposition of statutes, that the intention of the law-giver is to be deduced from a view of the whole, and of every part of a statute, taken and compared together. The real intention, when accurately ascertained, will always prevail over the literal sense of terms. To know the laws, is not to observe their mere words, but their force and power, and the reason and intention of the law-giver will control the strict letter of the law, when the latter will lead to palpable injustice, contradiction, and absurdity." These are maxims of sound interpretation, as the writer observes; and guided by them as rules by which we are to determine the proper meaning of the judgment referred to, we have had but little difficulty at coming to our conclusions.

The judgment of the court below, as has been shown, was at first reversed, and the cause remanded for further proceedings. On a rehearing another judgment was rendered, technically, but not by any proper understanding of the true intention of the court, reversed so as in effect to vacate or annul the judgment below. To give it such effect would be simply to do what had already been done in the first instance, and to remit the parties to the right to have their matters litigated anew in the district court, subject to such directions as this court might give as to further proceedings.

This was not the intention of the court as gathered from the whole proceedings in granting a rehearing, and in entering up the judgment as was done.    To this may be added the fact that I delivered the opinion of the court, upon which the judgment was based, and had the fullest opportunity of knowing what was its purpose and object in the whole pro-ceeding, and that in no sense was the term "reversed" used to overturn or vacate the judgment of the district court. Inasmuch as a majority of the court was of the opinion that the court below erred in allowing interest upon the unset-tled accounts of the parties, it was thought necessary, to a modification of the judgment, that it should be reversed, in order to an affirmance of so much of it as was not errone-ous.    That this was the view of the court, it is important to look at so much of the decision as affirms the order of the district court, in overruling Peterson's motion for a new trial.    Had the intention of the court been to vacate and set aside the judgment of the district court, it would have found it necessary to reverse the order overruling the mo-tion for a new trial, and to have remitted the whole case to the district court for a new trial.

In this view of the question, the only proper effect which is to be given to the word "reversed" is, that so much of the judgment of the court below as allowed interest, was reversed, and, as to the remainder, it was affirmed; any other exposition of its meaning would be unjust to the ap-pellant, inasmuch as it would be to deprive him of those rights which it is the policy of the law to settle by a speedy and final adjudication in a court having competent authority over the whole subject-matter, when at the same time no benefit could possibly accrue to the other party by any further litigation or delay.

The inquiry in this connection may well be made, Of what use could another trial below be to either party ?   In sending the case back to the district court for a new trial, it would be with directions only to render such judgment as it was competent for this court to render, thus entailing costs and delays to the parties unnecessarily.    This would be an ab-surdity upon the face of it, and the rule that where the ex-

o

position of a judgment leads to such a conclusion, it is to be rejected, may well be invoked. We think the lien of the appellant, created by the judgment of the district court of Boise county, against Peterson, as modified by this court in its judgment of the twenty-sixth of February, 1873, was not subordinated to the mortgage lien of the respondent, but that it continued in full force as a prior incumbrance, up to the time when appellant purchased the property under the Griffin sale, and that before the respondent can divest him of the rights thus created, he must be required not only to reimburse the amount paid for the real estate in question on such sale, but also the amount of his judgment, with interest, after deducting the value of the rents, issues, and profits, while he has had the use and occupation of the real estate.

It is the opinion of the court, that the decree of the district court be reversed, and the cause remanded with directions to said court to proceed to a final adjudication thereof, in conformity to this opinion.

It is further ordered, that the appellant pay one half of the costs of this court, and the respondent one half thereof.