# IN THE SUPREME COURT OF THE STATE OF IDAHO
**Docket No. 34809**

NANCY TAYLOR, DOUG HOUSTON, )
)
    Petitioners, )
)
and )
)
KIRBY VICKERS and CHERYL VICKERS, )
husband and wife, )
)
    Petitioners-Appellants, )
)
v. )
)
CANYON COUNTY BOARD OF )
COMMISSIONERS, a political subdivision )
of the State of Idaho, )
)
    Defendant-Respondent. )
)
EDWARD SAVALA, )
)
    Intervenor/Respondent. )

Boise, January 2009

2009 Opinion No. 83

Filed: June 09, 2009

Stephen W. Kenyon, Clerk

---

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gordon W. Petrie, District Judge.

District court order affirming Canyon County Board of Commissioners, <u>affirmed in part</u> and <u>reversed in part</u>.

White Peterson, P.A., Nampa, for appellants Vickers. Matthew Ace Johnson argued.

Canyon County Prosecutor's Office, Caldwell, for respondents. Samuel Bedell Laugheed argued.

Rose Law Group, Boise, for intervenor Savala. Todd Michael Lakey argued.

---

BURDICK, Justice

This case requires the Court to consider whether we can review the following county-level land use decisions after our recent holdings in *Giltner Dairy, LLC v. Jerome County*, 145

1

Idaho 630, 181 P.3d 1238 (2008), and *Highlands Development Corp. v. City of Boise*, 145 Idaho 958, 188 P.3d 900 (2008): (1) amendment to a repealed county comprehensive plan map, (2) *sua sponte* amendment to a county comprehensive plan map through "judicial notice," and/or (3) approval of a conditional rezone and corresponding development agreement. Appellants Kirby and Cheryl Vickers, husband and wife (collectively the Vickers), appeal from the district court's order affirming various land use decisions rendered by Respondent Canyon County Board of Commissioners (Board) in response to Intervenor/Respondent Edward Savala's application for a comprehensive plan map change, a conditional rezone, and a development agreement for his property. We vacate that part of the district court's order affirming the Board's amendments to the 1995 Comprehensive Plan Map and the 2010 Comprehensive Plan Map, holding that the Vickers failed to provide a statutory basis for judicial review of either amendment. We affirm that part of the district court's order affirming the Board's order for a conditional rezone of Savala's property, holding that the Board's approval of the conditional rezone and corresponding Development Agreement was not arbitrary, capricious, or an abuse of discretion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Savala is the owner of a parcel of property approximately 8.09 acres in size located in Canyon County in an "A" (Agricultural) zone. Savala seeks to locate a medical and dental clinic on his property, as well as to promote other commercial uses such as building a service station/convenience store, a restaurant, and a wine store/wine tasting room. In April of 2005, Savala submitted an application with the P&Z Commission requesting: (1) a comprehensive plan map change, (2) a conditional rezone of his property from an "A" (Agricultural) zone to a "C-2" (Community Commercial) zone, and (3) approval of a development agreement. A public hearing was held on the application on May 19, 2005. On June 8, 2005, the P&Z Commission recommended that the Board deny Savala's application in all respects.

Savala then requested the Board to review his application. The Board scheduled public hearings on the application for October 25 and October 27, 2005. The October 27 hearing was scheduled in anticipation of the Board's approval of Savala's request to amend the comprehensive plan map. The approval would constitute a "material change" from the P&Z Commission's recommendation, and, therefore require a second hearing on the amendment under Idaho Code § 67-6509. The Board sent notice of the hearings to property owners within

2

three-fourths of a mile of the Savala property and provided notice to the rest of the public through posting and publication. The notice provided in pertinent part:

**NOTICE IS HEREBY GIVEN**, that the Canyon County Board of Commissioners is scheduled to hold a public hearing **on a request by Edward Savala for a Comprehensive Plan Map Change from an Agricultural designation to a Community Commercial designation and a Conditional Rezone of approximately 8.09 acres from "A" (Agricultural) zone to a "C-2" (Community Commercial) zone. Also requested is approval of a Development Agreement.**

On October 20, 2005, in a separate action, the Commissioners adopted Resolution No. 05-229. The resolution repealed all prior comprehensive plans, including the 1995 Canyon County Comprehensive Plan (1995 Plan) that was in place at the time Savala filed his application, and adopted the 2010 Canyon County Comprehensive Plan (2010 Plan). The resolution contained no savings clause.

The first public hearing on Savala's application was held on October 25, 2005. During this hearing, questions were raised by both Savala's counsel and the Vickers' counsel as to whether the 1995 Plan or the 2010 Plan applied to the application. The Board ultimately decided that the 1995 Plan was the plan to be applied since it was the plan in place at the time Savala filed his application.

Due to the volume of public comment, the first public hearing was continued to October 27, 2005, which was the date previously scheduled for the second public hearing on the amendment. At the close of the October 27 hearing, the Board, by a 2-1 vote, granted Savala's request to amend the 1995 Plan. Commissioner Robert Vasquez, the no vote in the split decision, chose to recuse himself from any further deliberations on Savala's application, explaining he could not impose something that he disagreed with. Because the Board's decision to amend the 1995 Plan constituted a material change from the P&Z Commission's recommendation, the Board was required to hold a second public hearing on the amendment pursuant to I.C. § 67-6509. Hearings were scheduled for March 14 and March 31, 2006, and notice was provided.

The second public hearing on Savala's application was commenced on March 14, 2006. Again, due to the volume of public comments, the hearing was continued to March 31, 2006. At the close of the second hearing, the two remaining commissioners approved a motion to amend the repealed 1995 Plan. The two commissioners also approved Savala's request for a conditional

rezone of his property. Because the commissioners' approval of the conditional rezone once again overturned a recommendation of the P&Z Commission, thus constituting a material change, a second public hearing on the conditional rezone was required under I.C. § 67-6509.

The third and final public hearing on Savala's application was commenced immediately following the continuation of the second on March 31, 2006. At the close of the third hearing, the two commissioners approved the conditional rezone, along with a corresponding Development Agreement as required by section 07-06-07(2) of Canyon County Ordinance No. 05-002.[1] On May 4, 2006, the Board issued its findings of fact and conclusions of law, signed the zoning ordinance, and executed the Development Agreement. Although Savala did not request an amendment to the 2010 Plan, the Board took "judicial notice" that one was necessary and amended the 2010 Plan without providing notice or a public hearing as required by I.C. § 67-6509.

On June 1, 2006, the Vickers, who are neighboring landowners to Savala's property,[2] filed a petition for judicial review of the Board's orders. The district court issued an order affirming the Board's decisions in all respects. The Vickers then appealed to this Court. In response, the Board filed a motion to dismiss based on this Court's holdings in *Giltner Dairy, LLC v. Jerome County* (*Giltner Dairy*), 145 Idaho 630, 181 P.3d 1238 (2008), and *Highlands Development Corp. v. City of Boise* (*Highlands*), 145 Idaho 958, 188 P.3d 900 (2008), which were released after the district court issued its decision. In *Giltner Dairy* we held that there is no statutory right to judicial review of a county board of commissioners' decision whether or not to amend a comprehensive plan map, 145 Idaho at 633, 181 P.3d at 1241; and in *Highlands* we held that there is no statutory right to judicial review of a county board of commissioners' decision whether or not to approve a request for an annexation/initial zoning of land. 145 Idaho at 962, 188 P.3d at 904 The Board argued that *Giltner Dairy* is dispositive of the issue regarding the Court's jurisdiction to review the Board's amendments to the 1995 Plan and the 2010 Plan. The Board also argued that the Court has no jurisdiction to review the Board's approval of the conditional rezone under *Highlands* since a conditional rezone is not a "permit authorizing the development," which is a prerequisite for judicial review under the statute. Savala also filed a

---

[1] CCO 05-002 is no longer the controlling ordinance. Canyon County has since adopted CCO No. 08-026, which amended CCO 05-002.

[2] The Vickers own three parcels of rural property adjacent to and directly behind Savala's property.

4

motion for fees and costs should the appeal be dismissed, arguing the Vickers had pursued the appeal without a reasonable basis in fact or law based on this Court's holdings in *Giltner Dairy* and *Highlands*. The Vickers filed a response brief, arguing that this case is distinguishable from the actions disposed of in *Giltner Dairy* and *Highlands* since Savala was seeking affirmative approval of a course of development in the form of a conditional rezone and development agreement that would allow him to begin development on his project immediately upon approval. On September 3, 2008, this Court issued an order denying the Board's motion to dismiss and Savala's motion for attorney fees and costs.

## II. STANDARD OF REVIEW

This appeal involves land use decisions rendered by a county board of commissioners, which are local government actions. Rule 84(a)(1) of the Idaho Rules of Civil Procedure sets forth that the "actions of a local government, its officers or its units are not subject to judicial review unless expressly authorized by statute." Although the Idaho Administrative Procedures Act (IAPA) provides for judicial review of agency actions, this Court has held that a county board of commissioners does not fall within the definition of "agency" for purposes of applying IAPA. *Petersen v. Franklin County*, 130 Idaho 176, 182, 938 P.2d 1214, 1220 (1997). "Absent a statute invoking the IAPA's judicial review provisions, [the Board's] actions may not be reviewed under the IAPA." *Gibson v. Ada County Sheriff's Dept.*, 139 Idaho 5, 7–8, 72 P.3d 845, 847–48 (2003). The Local Land Use and Planning Act (LLUPA) authorizes judicial review under the standard set forth in IAPA for some county-level land use decisions; I.C. § 67-6521(d); however, judicial review is limited to situations in which a permit authorizing the development is at issue. *Giltner Dairy,* 145 Idaho at 632–33, 181 P.3d at 1240–41.

In cases where LLUPA authorizes judicial review of a county-level land use decision, we follow the standard of review set forth in IAPA. In a subsequent appeal from the district court's decision where the district court was acting in its appellate capacity under IAPA, this Court reviews the district court directly. *See Galli v. Idaho County*, 146 Idaho 155, __, 191 P.3d 233, 236 (2008). In reviewing the district court, we examine the county board of commissioners' findings to determine if they are supported by substantial and competent evidence. *See id.* "The court will not substitute its judgment for that of the [board] on questions of fact." *Id.*; I.C. § 67-5279(1). The district court must affirm the board's action unless the court determines that the board's findings, inferences, conclusions, or decisions are: "(a) in violation of constitutional or

statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." I.C. § 67-5279(3). Regardless of whether the county board of commissioners' action meets the standard set forth in Idaho Code § 67-5279(3), the district court must affirm the board's action "unless substantial rights of the appellant have been prejudiced." I.C. § 67-5279(4). It is the burden of the party contesting the board's action, here the Vickers, to first illustrate how the board erred in a manner specified under I.C. § 67-5279, and then establish that a substantial right has been prejudiced. *See Druffel v. State, Dept. of Transp.,* 136 Idaho 853, 855, 41 P.3d 739, 741 (2002).

## III. DISCUSSION

### A. The Board's Amendment to the Repealed 1995 Plan

First, the Vickers argue that the Board erred in amending the 1995 Plan Map since the Board had previously repealed the 1995 Plan. The Vickers argue that amending a repealed act is a legal nullity and, therefore, the Board exceeded its legal authority when it amended the repealed 1995 Plan. The respondents, however, argue there is no statutory right to judicial review of the Board's decision to amend the 1995 Plan under this Court's holding in *Giltner Dairy*, and even if there was, the Vickers did not question the Board's legal authority to amend a repealed plan during the hearings, thus failing to preserve the issue for appeal. We agree with the respondents that the Vickers have failed to provide a statutory basis for judicial review of the Board's amendment to the 1995 Plan Map under the repealed 1995 Plan. As such, there is no need for us to go on to consider whether the Vickers preserved the issue for appeal.

In *Giltner Dairy*, 145 Idaho 630, 181 P.3d 1238 (2008), this Court recently addressed whether a party is entitled to judicial review of a county board of commissioners' decision regarding an amendment to a county comprehensive plan map. We held that since a county board of commissioners does not fall under the definition of "agency," IAPA does not apply. 145 Idaho at 632, 181 P.3d at 1240. This Court further held that a request to change the comprehensive plan map does not authorize development and, therefore, is not an application for "a permit authorizing the development" under I.C. § 67-6521(1)(a). *See id.* at 633, 181 P.3d at 1241. Thus, we determined that section 67-6521(1)(d) of LLUPA, which provides the statutory right to judicial review for an "affected person" defined as "one having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the

6

development," does not provide a basis for judicial review of a county's amendment to its comprehensive plan. *Id.* (quoting I.C. § 67-6521(1)(a)). Therefore, this Court held that there is no statutory right to judicial review of a county's decision to amend its comprehensive plan map. *Id.*

Likewise, the Vickers do not have a statutory right to judicial review of the Board's decision to amend the 1995 Plan Map. The Vickers filed their appeal for judicial review based on I.C. § 67-6521 (LLUPA), I.C. § 67-5270 *et seq.* (IAPA), and I.R.C.P. 84. As set forth by this Court in *Giltner Dairy*, there is no statutory right to review a county's decision to amend its comprehensive plan map under LLUPA. 145 Idaho at 633, 181 P.3d at 1241. As such, the Vickers have failed to provide an independent statutory basis that would enable us to review the Board's decision under the standard set forth in IAPA. *See Gibson v. Ada County Sheriff's Dept.*, 139 Idaho 5, 7–8, 72 P.3d 845, 847–48 (2003). Because the district court did not have jurisdiction to review the Board's amendment to the repealed 1995 Plan Map, we vacate that part of the district court's order affirming the same.

## B. The Board's Amendment to the 2010 Plan

Next, the Vickers argue that the Board violated their due process rights by taking "judicial notice" that an amendment to the 2010 Plan Map was necessary, and in doing so bypassed the notice and hearing requirements under I.C. § 67-6509. The Board, however, argues that the amendment to the 2010 Plan Map was merely an administrative act designed to appropriately reflect the consequences of the change to the 1995 Plan Map and, therefore, should not be overturned. We hold that the Vickers have failed to point to a statute authorizing judicial review of the of the Board's *sua sponte* amendment to the 2010 Plan Map. Consequently, we are without jurisdiction to review the Board's action.

Idaho Code § 67-6509, which governs adoption, amendment, and repeal of a county comprehensive plan, provides in pertinent part:

> (a) The planning or planning and zoning commission, prior to recommending the plan, amendment, or repeal of the plan to the governing board, shall conduct at least one (1) public hearing in which interested persons shall have an opportunity to be heard. . . . Following the commission hearing, if the commission recommends a material change to the proposed amendment to the plan which was considered at the hearing, it shall give notice of its proposed recommendation and conduct another public hearing concerning the matter if the governing board will not conduct a subsequent public hearing concerning the proposed amendment. If the governing board will conduct a subsequent public

7

hearing, notice of the planning and zoning commission recommendation shall be included in the notice of public hearing provided by the governing board. . . .

(b) The governing board, as provided by local ordinance, prior to adoption, amendment, or repeal of the plan, may conduct at least one (1) public hearing, in addition to the public hearing(s) conducted by the commission, using the same notice and hearing procedures as the commission. The governing board shall not hold a public hearing, give notice of a proposed hearing, nor take action upon the plan, amendments, or repeal until recommendations have been received from the commission. Following consideration by the governing board, if the governing board makes a material change in the recommendation or alternative options contained in the recommendation by the commission concerning adoption, amendment or repeal of a plan, further notice and hearing shall be provided before the governing board adopts, amends or repeals the plan.

. . .

(d) Any person may petition the commission or, in absence of a commission, the governing board, for a plan amendment at any time. The commission may recommend amendments to the land use map component of the comprehensive plan to the governing board not more frequently than once every six (6) months.

The statute first directs the P&Z Commission to provide notice and a public hearing on the applicant's request for an amendment to the county comprehensive plan map. After the P&Z Commission issues its recommendation, the statute then requires that the Board provide notice and a second public hearing on the amendment. *See* I.C. § 67-6509(a)-(b). If the Board declines to follow the P&Z Commission's recommendation, the Board is required to provide notice of and hold a third and final hearing on the amendment. *See* I.C. § 67-6509(b). The statute also imposes a limitation that the P&Z Commission may only recommend amendments to the county comprehensive plan map only once every six months. I.C. § 67-6509(d).

Although the Vickers are correct that the Board bypassed at least two stages of due process requirements under I.C. § 67-6509 in amending the 2010 Plan Map through self-imposed "judicial notice," they have failed to point to a statute authorizing judicial review of the Board's amendment. The Vickers filed their appeal under I.C. § 67-6521 (LLUPA), I.C. § 67-5270 (IAPA), and I.R.C.P. 84. Because LLUPA does not provide an independent statutory basis for the Court to review the Board's amendment, we may not review the Vickers' procedural due process violation claim related to the same. Likewise, the district court did not have jurisdiction

to review the Board's amendment to the 2010 Plan. Therefore, we vacate that part of the district court's order affirming the Board's amendment to the 2010 Plan Map.

**C. The Board's Approval of Savala's Request for a Conditional Rezone and Corresponding Development Agreement**

Finally, the Vickers attribute error to the Board's approval of the conditional rezone of Savala's property. First, the Vickers argue that the Board committed an illegal type two spot zoning. Alternatively, the Vickers argue that the Board committed an arbitrary abuse of discretion by finding the proposed use (1) was harmonious with the 1995 Plan, (2) would not be injurious to other property in the immediate vicinity, and (3) would not change the essential character of the area. The respondents argue that there is no statutory right to judicial review of the Board's approval of the conditional rezone under this Court's holding in *Highlands*, and even if there was, the Board's decision is well-supported by evidence in the record and should not be overturned. We hold the Vickers have a statutory right to judicial review of the Board's approval of the conditional rezone and corresponding development agreement, but nevertheless uphold the Board's approval because it was not arbitrary, capricious, or an abuse of discretion.

    1. <u>The Vickers have a statutory right to judicial review of the Board's approval of the conditional rezone of Savala's property and corresponding Development Agreement.</u>

Before considering the Vickers' arguments, the Court must determine whether it is free to review the Board's decision to approve the conditional rezone of Savala's property. As aforementioned, the Vickers filed their appeal for judicial review based on I.C. § 67-6521 (LLUPA), I.C. § 67-5270 *et seq.* (IAPA), and I.R.C.P. 84. Under I.R.C.P. 84(a)(1), there must be a statute authoring judicial review of county actions. Absent a statute invoking IAPA's judicial review provisions, local government actions may not be reviewed under IAPA. *Gibson v. Ada County Sheriff's Dept.*, 139 Idaho 5, 7–8, 72 P.3d 845, 847–48 (2003). Although LLUPA provides the right to judicial review, the person must be an "affected person aggrieved by a decision." I.C. § 67-6521(1)(d). The statute defines an "affected person" as "one having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development." I.C. § 67-6521(1)(a). Thus, this Court must determine whether the Board's approval of the conditional rezone constitutes a "permit authorizing the development" under I.C. § 67-6521(1)(d).

Section 07-06-07 of Canyon County Ordinance (CCO) No. 05-002 governs conditional rezones. The term "conditional rezone" is defined as "[t]he rezoning of land with conditions

imposed so that if the conditions are not complied with, the rezone may be withdrawn and the land revert back to its former zoning classification." CCO No. 05-002, section 07-02-03. Under section 07-06-07, any conditions imposed on the property in accordance with the conditional rezone must be incorporated into a development agreement. *Id.* at section 07-06-07(2). The ordinance requires that the applicant execute a written development agreement to implement and be bound by any such condition, and no final conditional rezone action will be taken until such development agreement is recorded in the office of the county recorder. *Id.* Thus, the development agreement is an integral part of a conditional rezone in Canyon County.[3] Once the applicant meets the conditions set forth in the development agreement, the preliminary conditional rezoning approval becomes final and the property is rezoned on the county rezoning map. *Id.* at section 07-06-07(5). Even though the developer must still obtain the necessary permits from various agencies in order to begin any physical changes, there is no further action required by the Board before development may commence. In other words, the Board's approval of the conditional rezone and corresponding development agreement is a green light for development to begin.

Canyon County Ordinance No. 05-002 also provides for conditional use permits. The term "conditional use" is defined under section 07-02-03 as follows:

> A use that would not be appropriate generally or without restriction throughout the zoning district but which, if regulated, would not be detrimental to public health, safety, or general welfare. The term "conditional use" shall mean a use or occupancy of a structure, or use of land, permitted only upon the issuance of a conditional use permit and subject to the limitations and conditions specified therein. Conditional uses require a permit as provided for in Idaho Code ' 67-6512 and this ordinance.

Although there are notable differences for why an applicant would pursue a conditional use permit versus a conditional rezone—i.e., a conditional use permit is tailored more toward specific uses as compared to a conditional rezone and a conditional use permit expires within three years if not commenced or five years if not completed whereas there is no set expiration for

---

[3] Idaho Code § 67-6511A, which governs development agreements, states that "[e]ach governing board may, by ordinance adopted or amended in accordance with the notice and hearing provisions provided under section 67-6509, Idaho Code, require or permit as a condition of rezoning that an owner or developer make a written commitment concerning the use or development of the subject parcel." Thus, a development agreement is not mandatory under the statute. The fact that Canyon County requires an applicant enter into a development agreement with the county binding him or her to the development conditions imposed in accordance with the conditional rezone is evidence that the development agreement is integrally tied to the conditional rezone under the ordinance.

a conditional rezone—the two are functionally equivalent. Both ultimately allow nonconforming uses to occur on the subject property.

We find it necessary to clarify two statements listed above. First, although a conditional use permit and a conditional rezone are generally not functional equivalents, they are in this case. The appeal concerns the Board's approval of a conditional rezone and corresponding development agreement in accordance with Canyon County Ordinance 05-002. As set forth above, if the Board determines that conditions are necessary to restrict the use of the rezoned property less than the full use allowed under the requested rezone, then the applicant must execute a written development agreement to implement and be bound by such conditions. CCO 05-002, section 07-06-07. Here, there were conditions attached to the conditional rezone; accordingly, the Development Agreement is integrally tied to our analysis of whether the Board's approval of the conditional rezone constitutes a "permit authorizing the development" under LLUPA. I.C. § 67-6521(1)(a). In other words, the issue presented on appeal is whether the end result of the Board's approval of the conditional rezone and corresponding Development Agreement is a permit authorizing the development. Because the end result of the Board's approval of the conditional rezone and corresponding Development Agreement is to authorize the development without further approval from the Board, the Board's approval of the conditional rezone and corresponding Development Agreement is the functional equivalent of an approval of a conditional use permit, which as set forth below is a "permit authorizing the development." I.C. § 67-6521(1)(a). In fact, counsel for the Board admitted during oral argument that based on the end results, a conditional use permit and a conditional rezone are functionally equivalent in Canyon County.[4] In sum, although the statement that a conditional use permit and a conditional rezone are functional equivalents may be incorrect in the general sense, it is correct under the facts of this case.

---

[4] Justice Burdick: How does [a conditional rezone and development agreement] differ from a special use permit?

Counsel: Functionally, at the end of the day, if the conditions of approval are met and building permits are issued, then I don't think it does. But it's designed to be more about a general area, whether a general type of growth is advisable. Whereas a conditional use permit says that this type of thing is not adviseable for the area but under these conditions it's okay for this location.

Justice Burdick: Okay, so then what's the functional difference?

Counsel: At the end of the day, I don't think there is one sir.

We also seek to clarify our statement that both a conditional use permit and a conditional rezone ultimately allow nonconforming uses to occur on the subject property. Technically, a conditional rezone does not allow nonconforming uses to occur on the subject property since the land classification changes. This technicality aside, the point we are trying to make is that both a conditional use permit and a conditional rezone coupled with a corresponding development agreement ultimately allow the applicant to use the subject property in a manner that would have not been permitted before the issuance of the conditional use permit or before the approval of the conditional rezone, and in a manner differently than the surrounding property owners are currently permitted to use their property, assuming that no conditional use permits or conditional rezones have been approved in respect to their property as well. Thus, the end result of a conditional use permit as well as a conditional rezone coupled with a development agreement is to allow land to be used in a way that was both nonconforming and unpermitted before the Board's approval.

Returning to the facts at hand, Savala requested a conditional rezone from an "A" (Agricultural) zone to a "C-2" (Community Commercial) zone. The Board preliminarily approved Savala's request and imposed various conditions on his property, which included the installation of drinking water and community waste systems; the improvement and paving of a private access road; landscaping, featuring a mix of trees and shrubs; the creation of natural material fence or similar barrier no less than four feet tall on the southern border of the property; and the paving of a parking lot. These conditions were incorporated into the Development Agreement, under which Savala agreed to comply with the conditions of the conditional rezone. The Development Agreement did not contain any standards under which the Board was to determine whether or not the conditions had been met. Once Savala fully complied with these conditions, the preliminary conditional rezone would become final and his property would be rezoned to "C-2." At such time, without further approval from the Board, Savala could begin construction of the medical and dental clinics and begin promoting other commercial uses of his property once obtaining the necessary permits.

Therefore, we hold that the Board's approval of the conditional rezone of Savala's property and corresponding Development Agreement is "a permit authorizing the development" under LLUPA that is subject to review by this Court pursuant to the standard set forth in IAPA. Although the word "permit" is not defined under LLUPA, the Act does make other references to

12

the term. For example, I.C. § 67-6517 refers to "a permit as defined by this chapter," which acknowledges that what constitutes a permit is defined by the Act. Chapter 65 mentions various permits, including subdivision permits (I.C. § 67-6513), planned unit development permits (I.C. § 67-6515), variance permits (I.C. § 67-6516), building permits (I.C. § 67-6517), and—most importantly to this case—special use permits (I.C. § 67-6512). *See Giltner Dairy, LLC v. Jerome County*, 145 Idaho 630, 633, 181 P.3d 1238, 1241 (2008). Although Canyon County employs the term "conditional use permit" rather than "special use permit," the two can be used synonymously. *See Black's Law Dictionary* 1434 (8th ed. 2004). In fact, Canyon County requires that a permit be issued for a conditional use as provided by I.C. § 67-6512, which is the statutory provision governing special use permits. CCO No. 05-002, section 07-02-03. Idaho Code § 67-6512(a) also uses "conditional use permit" and "special use permit" interchangeably since the provision applies to "special *or* conditional use permits." (Emphasis added). As set forth above, a conditional rezone and corresponding development agreement is the functional equivalent of a conditional use permit in Canyon County. Thus, it reasonably follows that since the Board's approval of the conditional rezone and corresponding Development Agreement is the functional equivalent of a conditional use permit, which is in essence a special use permit, the Board's approval of the conditional rezone and corresponding Development Agreement is "a permit authorizing development" under LLUPA. As such, we are statutorily authorized to review the Board's approval of the conditional rezone and corresponding Development Agreement under LLUPA pursuant to the standard set forth in IAPA.

2. The Board did not commit illegal type two spot zoning.

The Vickers argue that the Board committed an illegal type two spot zoning by singling out Savala's property for commercial use in the midst of an agricultural zoning district merely for Savala's private gain. However, the Board argues that we need not address the Vickers' claim of type two spot zoning because only type one spot zoning occurred in this case, which is valid. We find that the Board's factual determination that Savala's application for a conditional rezone complied with the 1995 Plan is supported by substantial, competent evidence and, therefore, agree with the Respondents that there is no need to address the Vickers' claim of type two spot zoning.

"A claim of 'spot zoning' is essentially an argument the change in zoning is not in accord with the comprehensive plan." *Evans v. Teton County*, 139 Idaho 71, 76, 73 P.3d 84, 89 (2003).

13

In *Evans,* this Court clarified that there are two types of spot zoning. The first type, referred to as type one spot zoning, "may simply refer to a rezoning of property for a use prohibited by the original zoning classification." *Id.* "The test for whether [type one spot zoning] is valid is whether the zone change is in accord with the comprehensive plan." *Id.* at 77, 73 P.3d at 90. "[T]he question of whether a zoning ordinance is 'in accordance with' the comprehensive plan is a factual question which can be overturned only where the factual findings are clearly erroneous." *Friends of Farm to Market v. Valley County*, 137 Idaho 192, 200, 46 P.3d 9, 17 (2002). The second type, referred to as type two spot zoning, "refers to a zone change that singles out a parcel of land for use inconsistent with the permitted use in the rest of the zoning district for the benefit of an individual property owner." *Id.*

Thus, the first step in our analysis is to decide whether the conditional rezone is in accordance with the county comprehensive plan. In order to answer this question, we must determine which comprehensive plan applies. The Vickers argue that because it is a legal nullity to amend a repealed plan, the Board was required to apply the 1995 Plan without its amendment to the 1995 Plan Map. Generally, courts hold that a repealed act cannot be amended since an amendatory act alters, modifies, or adds to a prior statute. 1A Sutherland Statutory Construction § 22:3 (6th ed. 2000).[5] Without an act in place, there is nothing to amend. However, this principle is inapplicable when dealing with local land use decisions in this state as "Idaho law is well established that an applicant's rights are determined by the ordinance in existence at the time of filing an application for the permit." *South Fork Coalition v. Bd. of Com'rs of Bonneville County*, 117 Idaho 857, 860–61, 792 P.2d 882, 885–86 (1990); *Cooper v. Bd. of County Com'rs of Ada County*, 101 Idaho 407, 412, 614 P.2d 947, 952 (1980). The Court adopted this minority rule to prevent local authorities from delaying or withholding action on an application in order to change or enact a law to defeat the application. *See South Fork Coalition*, 117 Idaho at 861, 792 P.2d at 886. In other words, this rule ensures that local authorities do not engage in arbitrary action *before* they render their decision on an application. The policy behind this rule is independent of whether the local authorities ultimately grant an applicant's request(s).

---

[5] This Court applies the same principles in construing municipal ordinances as it does in the construction of statutes. *See Friends of Farm to Market v. Valley County*, 137 Idaho 192, 197, 46 P.3d 9, 14 (2002). Therefore, it is proper to analogize to the law on amending a repealed statute for guidance on this issue.

Here, the 1995 Plan was in effect at the time Savala filed his application. Pursuant to section 07-06-01(b) of CCO No. 05-002, Savala was entitled to apply for an amendment to the county comprehensive plan map. Thus, in applying our rule from *South Fork Coalition* to section 07-06-01(b), Savala had the right to have his request reviewed under the 1995 Plan, and hence the 1995 Plan Map. Savala's rights were set under the 1995 Plan. *See id.* We find no reason to alter this well-settled rule of law just because the Board later repealed the 1995 Plan in an unrelated action before granting Savala's request to amend the 1995 Plan Map. Therefore, we hold that the 1995 Plan with the 1995 Plan Map amendment applies.

From the evidence in the record, we uphold the Board's determination that Savala's request for a conditional rezone of his property from an "A" (Agricultural) zone to a "C-2" (Community Commercial) zone is in accordance with the 1995 Plan as amended. The record reflects that the Board approved Savala's conditional rezone application based on the testimony of experts and citizens, both in favor and in opposition to Savala's request. The Board conducted a thorough analysis of the relevant components of the 1995 Plan,[6] finding factors in favor, neutral, and in opposition to Savala's request. Ultimately, the Board determined the weight of the evidence supported the finding that the conditional rezone is in accordance with the 1995 Plan. This finding is supported by substantial, competent, although conflicting, evidence in the record and, therefore, must be affirmed. *See Friends of Farm to Market v. Valley County*, 137 Idaho 192, 196, 46 P.3d 9, 13 (2002). Consequently, the Vickers' claim of spot zoning need not be addressed since the type one spot zoning that occurred in this case is valid. *See Evans v. Teton County*, 139 Idaho 71, 77, 73 P.3d 84, 90 (2003).

3. <u>The Board's approval of the conditional rezone and corresponding Development Agreement was not arbitrary, capricious, or an abuse of discretion</u>.

The Vickers also argue the Board's approval of the conditional rezone was arbitrary, capricious, and an abuse of discretion, and therefore should be overturned. In support of their argument, the Vickers point to three alleged errors surrounding the Board's approval. First, the Vickers argue that the rezone is not harmonious or in accordance with the 1995 Plan. Section 07-06-05 of CCO 05-002, which mirrors I.C. § 67-6511, sets forth the criteria the Board must

---

[6] The Board considered the following components of the 1995 Plan: (1) property rights; (2) population policies; (3) economic development policies; (4) overall land use policies; (5) agricultural lands; (6) community commercial; (7) public services, facilities, and utilities; and (8) preliminary land use category descriptions, development policies, and development guidelines.

evaluate when considering a zoning amendment.[7]   One criterion is whether the zoning amendment will be harmonious and in accordance with the applicable comprehensive plan. CCO 05-002, section 07-06-05(A).  The Vickers' argument regarding this criterion centers on the thirteen red dots marked on the 1995 Plan Map, which represent rural or commercial centers where community development is appropriate.[8]  Specifically, the Vickers argue that the Board stretched the meaning of the red dot immediately across Highway 55 from Savala's property as being a planning designation rather than recognizing preexisting community development.  In support of their assertion, the Vickers cite to Ryan Cutler's testimony, an employee of the Canyon County Development Services Department.  Mr. Cutler testified at the first hearing that the red dot across the highway, nearly one-half mile away from Savala's property, designated and was related to the Huston Post Office.  The Vickers also cite to their counsel's testimony that the purpose of the red dot likely corresponded to "conditions that existed at the time that the map was prepared and that was the location of the post office," and that the Assistant Director of Canyon County Development Services Department had visited the area and confirmed that the red dot signified the Huston Post Office.

Before addressing this issue, we find it necessary to distinguish between a county comprehensive plan and a land use map, and to clarify what effect the Board's amendment to the 1995 Plan Map has on our determination of whether the rezone is harmonious and in accordance with the comprehensive plan.  Under I.C. § 67-6508, the planning and zoning commission is required to prepare, implement, and review and update a county comprehensive plan.  The plan is required to have the following fourteen components unless the plan specifies why a particular

---

[7] The criteria that the Board must consider is:

> (1) Whether the zoning amendment is harmonious with and in accordance with the applicable comprehensive plan;
> (2) Whether the proposed use will be injurious to other property in the immediate vicinity and/or will negatively change the essential character of the area;
> (3) Whether adequate sewer, water, and drainage facilities, and utility systems are to be provided to accommodate said use;
> (4) Whether measures will be taken to provide adequate access to and from the subject property so that there will be no undue interference with existing traffic patters; and
> (5) Whether essential public services such as, but not limited to, school facilities, police and fire protection, emergency medical services and irrigation facilities, will be negatively impacted by such use or will require additional public funding in order to meet the needs crated by the requested change.

[8] Of the thirteen red dots on the 1995 Plan Map, eleven are located outside the impact areas.

component is unnecessary: (1) property rights; (2) population; (3) school facilities and transportation; (4) economic development; (5) land use (including a land use map); (6) natural resources; (7) hazardous areas; (8) public services; facilities, and utilities; (9) transportation; (10) recreation; (11) special areas or sites; (12) housing; (13) community design; and (14) implementation. I.C. § 67-6508. Therefore, the land use map is merely one subpart of a component of the county comprehensive plan. *See Bone v. City of Lewiston*, 107 Idaho 844, 849, n.7, 693 P.2d 1046, 1051, n.7 (1984).

In this case, Savala made a request to rezone his property in conjunction with his request to amend the 1995 Plan Map. When presented with a rezone request, the governing board must first determine whether the rezone would be "in accordance" with the policies set forth in the comprehensive plan. I.C. § 67-6511. In other words, it is not a requirement that the zoning ordinance mirror the comprehensive plan. *See Love v. Board of County Comm'rs of Bingham County*, 108 Idaho 728, 730, 701 P.2d 1293, 1295 (1985). In *Bone v. City of Lewiston*, 107 Idaho 844, 693 P.2d 1046 (1984), we explained what a governing board must first do when reviewing a request for a rezone. We stated that the board must "make a factual inquiry into whether the requested zoning ordinance or amendment reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the present factual circumstances surrounding the request." 107 Idaho at 850, 693 P.2d at 1052. This includes, in part, whether the applicant's request is in accordance with the land use map component of the plan. However, as set forth in Idaho Code § 67-6508(e), the land use map merely displays "*suitable projected land uses for the jurisdiction.*" (Emphasis added). "[T]he land use map, in essence, is a goal or forecast of future development." *Bone*, 107 Idaho at 850, 693 P.2d at 1052. "[A] [] land use map does not require a particular piece of property, as a matter of law, to be zoned exactly as it appears on the land use map." *Id.* Accordingly, the Board's amendment to the 1995 Plan Map was not a necessary predicate to its approval of the conditional rezone even though Savala's property was zoned "A" (Agricultural) on the land use map. The Board could have found that the rezone was harmonious and in accordance with the 1995 Plan without it. The fact that the Board amended the 1995 Plan Map is evidence the Board determined that the conditional rezone was not in accordance with the 1995 Plan without the amendment to the land use map component. Therefore, we will pay more credence to the Vickers' contention that the Board misinterpreted the meaning of the red dot on the 1995 Plan Map.

After reviewing the evidence in the record, we find that the Board did not abuse its discretion in determining that the conditional rezone is harmonious and in accordance with the amended 1995 Plan. Although the Vickers cite to testimony in their brief that supports their interpretation of the red dot at issue, there is also evidence in the record to support the Board's interpretation of the red dot. Savala's counsel testified that the red dot indicates a "C-2" (Community Commercial) designation. In addition, Steve Fultz with the Caldwell Economic Development Council testified that the subject property is adjacent to land that was identified for commercial development in the 1995 Plan Map. Furthermore, the purpose of the county comprehensive plan map is to indicate "suitable projected land uses for the jurisdiction." I.C. § 67-6508(e). In fact, the 1995 Plan, by its own language, states that the county plan map "designates land use areas" and that these designations "are general and are to be used for planning purposes." Thus, in light of these provisions and the testimony cited above, it was reasonable for the Board to interpret the red dot as being a planning designation. Therefore, we find that the Board's determination that the conditional rezone is harmonious and in accordance with the 1995 Plan as amended was not arbitrary, capricious, or an abuse of discretion. *See* I.C. § 67-5279(3)(e).

Second, the Vickers argue that the rezone will create a commercial strip mall in the midst of agricultural land, thereby injuring neighboring properties and changing the essential character of the area. Section 07-06-05(B) of CCO 05-002 requires that Board consider whether the proposed use will be injurious to other property in the immediate vicinity and/or will negatively change the essential character of the area. The Vickers claim the Board failed to give adequate weight to testimony in the record that the proposal will injure neighboring properties by negatively impacting the ability of neighboring agricultural properties to manage their crops through aerial spraying and by increasing traffic in the area, thus leading to additional safety concerns. The Vickers also contend that the Board approved the conditional rezone in spite of policies contained in the 1995 Plan stating that development activity should only be encouraged in incorporated cities and/or areas of city impact, and that agricultural land with "best suited" or "moderately suited" soil, such as Savala's property, should be protected.

However, we are unable to find that the Board abused its discretion in determining that the conditional rezone will not be injurious to other property in the immediate vicinity and/or will not negatively change the essential character of the area. Charles Robinson, a licensed

18

agronomist and crop advisor living approximately three miles from the subject property, testified that "a development of this type will not have any adverse affects on surrounding agriculture." Mr. Robinson also testified that Savala's proposal would fit in well in the area and would not take agricultural ground out of production. In regard to traffic concerns, Mr. Robinson testified that the proposal would have little impact on agricultural traffic since nearby farmers use Pride Lane and the back roads and seldom use Highway 55. Furthermore, Savala testified that his proposal would include extensive landscaping as well as some fencing to buffer other uses, including agricultural uses. The Board gave weight to the fact that Savala agreed to exclude certain types of businesses from the development in an effort to lessen any adverse impact on the adjacent land owners. The Board also concluded that the proposal would not negatively change the essential character of the area since there was already commercial activity in the area, specifically that across Highway 55 from Savala's property, to the east of his property, and to the south around the corner from his property; and that due to its small size, the subject property is not considered economically viable agricultural land. Therefore, we find that the Board's determination was not arbitrary, capricious, or an abuse of discretion. *See* I.C. § 67-5279(3)(e).

The Vickers also attribute error to the Board's conclusion that the proposal created convenience. The Vickers argue that a standard of convenience will make any area with people living in it, despite its rural character and lifestyle, a future site for a strip mall. Although the Board found Savala's proposal would provide retail, food, and agricultural services more readily available and convenient to the surrounding agricultural industry, this was but one basis for the Board's approval of the conditional rezone. The Board also determined that the proposal would bring 25 to 45 additional jobs to the area with estimated combined annual salary totaling approximately $1,000,000.00, and that development would include improvements to Highway 55 at the access point, such as a left turn bay and a right turn. Because the Vickers placed undue weight on the Board's finding of convenience, we find it unnecessary to address their policy argument.

Finally, the Vickers argue that the conditional rezone violates the purpose behind LLUPA to protect and preserve agricultural land against overdevelopment and incompatible uses. In support of their argument, the Vickers cite to I.C. § 67-6502, which states that the purposes behind LLUPA include: "(e) to encourage the protection of prime agricultural, forestry, and mining lands for the production of food, fiber and minerals; (f) to encourage urban and urban-

19

type development within incorporated cities; and (g) to avoid undue concentration of population and overcrowding of land." I.C. § 67-6502(e)-(g). The Vickers argue that these purposes speak directly to the fears expressed in their testimony as well as in the testimony of others, including Doug Houston, who testified that the properties in the area "have some of the best vineyards and orchards in the State of Idaho and it's something that we need to be proud of and we need to preserve."

However, LLUPA seeks to protect *prime* agricultural land. Although LLUPA does not define "prime agricultural land," I.C. § 67-6529 sets forth that "agricultural land" is to be defined by local ordinance or resolution. Section 07-02-03 of CCO 05-002 defines "agriculture" as:

> Tilling of soil, pasturage, sod/turf farms, horticulture, aquaculture, viticulture, floriculture, raising crops directly from the soil, raising livestock, poultry, poultry products, dairy animals and dairy products, bee keeping or bee keeping products, fur animals, trees grown in row crop fashion, fruits of all kinds and their products, floral and ornamental and greenhouse products, including all uses customarily accessory and incidental thereto.

*Webster's Dictionary* defines "prime" as "first in excellence or importance: having the highest quality or value." *Webster's New International Dictionary* 1801 (3d ed. 1969). Here, the property at issue is not "prime agriculture land." Mr. Robinson testified that the subject property has been planted with onion seed crop and a sweet corn seed crop but that yields were poor due to the alkaline soil. Mr. Robinson also testified that the proposal would "not take prime agricultural ground out of production." His testimony in no way indicates that Savala's property has high value for agricultural purposes, as that term is defined by Section 07-02-03 of CCO 05-002. Contrary to the Vickers' assertion, the fact that some crops are sustainable in the area does not make it prime agricultural land. We hold that the Board's approval of the conditional rezone was in compliance with the purpose of LLUPA to protect prime agricultural land and, therefore, was not arbitrary, capricious, or constitute an abuse of its discretion. *See* I.C. § 67-5279(3)(e).

In regard to the Vickers' argument that the Board's approval of the conditional rezone frustrates the purposes listed under I.C. § 67-6502(f) and (g), the Vickers do not provide support for how the rezone discourages urban and urban-type development within incorporated cities, or how it fails to promote the avoidance of undue concentration of population and overcrowding of land. The burden is on the Vickers to show how the Board erred in a manner specified under I.C. § 67-5279. *See Druffel v. State, Dept. of Transp.,* 136 Idaho 853, 855, 41 P.3d 739, 741 (2002).

20

Because the Vickers have failed to meet this burden, we decline to consider their argument on appeal.

Based upon our analysis set forth above, we hold that the Board's approval of Savala's request for a conditional rezone of his property was not arbitrary, capricious, or an abuse of discretion. *See* I.C. § 67-5279(2). The record demonstrates that the Board followed the criteria set forth in section 07-06-05 of CCO 05-002 and I.C. § 67-6511, and found adequate evidence to support the relevant questions set forth in these provisions. The Board thoroughly analyzed Savala's application throughout four days of hearings, which spanned over five months, and issued 158-pages of findings of facts, conclusions of law, and orders regarding the proposal. Based on its findings, the Board determined the conditional rezone conformed to the comprehensive plan, the rezone did not injure neighboring property owners or change the essential character of the area, and Savala's proposal had met the other criteria set forth in section 07-06-05 of CCO 05-002. Therefore, we affirm the district court's order upholding the Board's decision to approve the conditional rezone.

## D. Attorney Fees on Appeal

All parties request attorney fees on appeal. First, the Vickers request attorney fees on appeal under I.C. § 12-117. Idaho Code § 12-117(1) states as follows:

> Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, *the court shall award the prevailing party reasonable attorney's fees*, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

(Emphasis added). Idaho Code § 12-117(1) only provides a statutory basis for attorney fees to a prevailing party. In this case, the Vickers are not a prevailing party. Therefore, we deny the Vickers' request for attorney fees under I.C. § 12-117.

The Board also requests attorney fees under I.C. § 12-117. As aforementioned, I.C. § 12-117(1) awards attorney fees to the prevailing party if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law. Although the Board is the prevailing party in this case, we are unable to find that the Vickers acted without a reasonable basis in fact or law. We have previously found that parties acted without a reasonable basis in fact or law for purposes of awarding attorney fees under I.C. § 12-117 when there was no statute authorizing judicial review, but have only done so in cases where this Court was barred from

21

reviewing all claims. *See Giltner Dairy, LLC v. Jerome County*, 145 Idaho 630, 634–35, 181 P.3d 1238, 1241–42 (2008); *Highlands Development Corp. v. City of Boise*, 145 Idaho 958, 962, 188 P.3d 900, 904 (2008). In this case, we determined that the Vickers had a statutory right to judicial review of the Board's approval of the conditional rezone and corresponding Development Agreement. Therefore, we deny the Board's request for attorney fees under I.C. § 12-117.

Finally, Savala requests attorney fees under I.C. §§ 12-117 and 12-121. Idaho Code § 12-117 sets forth that attorney fees are awardable when the adverse parties are a county and a person. Assuming, without deciding, Savala is entitled to attorney fees as an intervenor under I.C. § 12-117, an award is not proper in this case. As set forth above, the Vickers had a statutory right to judicial review of the Board's approval of the conditional rezone and corresponding Development agreement. Thus, the Vickers did not pursue this appeal without a reasonable basis in fact or law. In regard to Savala's request for attorney fees under I.C. § 12-121, attorney fees are awardable only if the appeal was brought "frivolously, unreasonably, and without foundation." *Gustaves v. Gustaves,* 138 Idaho 64, 71, 57 P.3d 775, 782 (2002). Here, we are unable to find that the Vickers pursued this appeal frivolously, unreasonably, and without foundation, especially in light of the unique issues that were presented in this case. As such, we deny Savala's requests for attorney fees under I.C. §§ 12-117 and 12-121.

## IV. CONCLUSION

We vacate that part of the district court's order affirming the Board's amendments to the 1995 and 2010 Plan Maps because the Vickers failed to provide a statutory basis for judicial review of the Board's amendments to the comprehensive plan maps. We affirm that part of the district court's order upholding the Board's order approving the conditional rezone of Savala's property, holding that although the Vickers have a statutory right to judicial review of the Board's approval of the conditional rezone and corresponding Development Agreement, we are unable to find that the Board's decision was arbitrary, capricious, or an abuse of discretion. We deny all parties' requests for attorney fees.

Justices J. JONES and W. JONES, **CONCUR.**

HORTON, J., specially concurring in part and dissenting in part.

I concur in the result, save as to the denial of the Board's request for an award of attorney fees pursuant to I.C. § 12-117. However, I cannot agree entirely with the majority's analysis of

22

the substantive issues presented by this appeal. Specifically, I do not read the LLUPA as authorizing our review of any part of the Vickers' petition for review, including the portion addressed to the Board's approval of Savala's application for a conditional rezone based upon the development agreement. Thus, I would remand with instructions to the district court to dismiss the Vickers' petition in its entirety. In addition, I would award attorney fees to the Board but not Savala.

The majority correctly states that in order for a court to review the Board's action in approving the conditional rezone and accompanying development agreement, there must be a statute authorizing such review. IDAHO CONST. art. V, §13; I.R.C.P. 84(a)(1). The majority further recognizes that I.C. § 67-6521 would authorize judicial review of the Board's approval, as long as that approval amounts to an issuance of a "permit authorizing development." The majority then reasons that "since the Board's approval of the conditional rezone and corresponding Development Agreement is the functional equivalent of a conditional use permit, which is in essence a special use permit, the Board's approval of the conditional rezone and corresponding Development Agreement is . . . 'a permit authorizing development' under LLUPA." In my view, this conclusion stretches the statutory language too far.

Although the word "permit" is not contained in the definitions section of LLUPA, I.C. § 67-6517 refers to "a permit as defined in this chapter." Thus we know, as the majority points out, that "what constitutes a permit is defined by the Act." The act refers to special use permits (I.C. § 67-6512), subdivision permits (I.C. § 67-6513), planned unit development permits (I.C. § 67-6515), variance permits (I.C. § 67-6516), building permits (I.C. § 67-6517), and conditional use permits (I.C. §§ 67-6512, 67-6532). There is no provision in the LLUPA that refers to a permit for a "conditional rezone based upon a development agreement." We are therefore not authorized to review the Board's action in granting a conditional rezone based upon a development agreement pursuant to I.C. § 67-6521—such action is not the issuance or denial of a *permit*. If the legislature had intended to allow for judicial review of such action, it would have included a conditional rezone based upon a development agreement within the act's delineation of the different kinds of permits or otherwise so stated.

The majority contends that approval of a conditional rezone based upon a development agreement is the functional equivalent of an issuance of a special use permit, as mentioned in I.C. § 67-6512, and that thus we are authorized to review the Board's action pursuant to I.C. §

23

67-6521. I disagree. A special use permit is a different animal than a conditional rezone and accompanying development agreement. The LLUPA addresses the former in I.C. § 67-6512, while the latter is governed by I.C. § 67-6511A. A special use permit may be granted in cases where the "use is conditionally permitted by the terms of the ordinance, subject to conditions pursuant to specific provisions of the ordinance. . . ." I.C. § 67-6512(a). In applying for a special use permit, an owner avers that his use is one permitted by the ordinance and that if given the permit he will abide by the conditions set out in the ordinance. In contrast, with a conditional rezone and corresponding development agreement, a county may "require or permit as a condition of rezoning that an owner or developer make a written commitment concerning the use or development of the subject parcel." I.C. § 67-6511A. In applying for a conditional rezone based upon a development agreement, an owner seeks a new classification of his property that will be conditioned upon terms to which he and the county agree.

The majority reasons that a grant of either of these things "ultimately allow[s] nonconforming uses to occur on the subject property" and that thus they are functionally the same. This is incorrect. A special use permit does not change the zoning of the subject property. By contrast, once a conditional rezone and corresponding development agreement has been approved, the subject property is rezoned so that the use conforms. In short, the granting of a special use permit allows a nonconforming use if that use is one enumerated in the ordinance and the owner abides by the conditions set out in the ordinance. The zoning classification of the land does not change. Conversely, approval of a conditional rezone based upon a development agreement changes the zoning classification of the land, subject to the owner's compliance with agreed upon conditions. The differences between these two grants, though perhaps subtle, are important enough that the legislature dealt with each of them in separate provisions, subjecting only one of them to judicial review by terming it a "permit." Savala requested and received a rezone of his property conditioned upon his compliance with a development agreement in which the Board requires him to make various installations and improvements on his property. This is the very process described by I.C. § 67-6511A, which is not a process by which a county issues a "permit" as that word is defined by Idaho Code, title 67, chapter 65.

Because a conditional rezone based upon a development agreement is not a permit as defined by the LLUPA, I would conclude that there is no statutory authority for review of any portion of the Vickers' petition for review. This conclusion renders irrelevant the question of

24

whether a conditional rezone based upon a development agreement "authorizes development" for purposes of I.C. § 67-6521(1)(a), and thus I would decline to address it.

Furthermore, because there is no statute authorizing review of the Vickers' petition, I would conclude that not only are they not the prevailing party, but that they acted without a reasonable basis in fact or law in bringing their petition. *Giltner Dairy, LLC v. Jerome County*, 145 Idaho 630, 633-34, 181 P.3d 1238, 1241-42 (2008). I would thus award the Board attorney fees pursuant to I.C. § 12-117. *Id.*

We have previously awarded attorney fees to a party in Savala's position—an intervenor on the side of the county who prevails when a petition for review is dismissed for lack of statutory authority—under I.C. § 12-121. *Id.* Although I joined in the decision in *Giltner Dairy*, I am convinced that our award in that case was in error. Idaho Code § 12-121 states in relevant part that "[i]n any *civil action*, the judge may award reasonable attorney's fees to the prevailing party . . . ." (Emphasis added). In *Lowery v. Board of County Comm'rs for Ada County*, 117 Idaho 1079, 1082, 793 P.2d 1251, 1254 (1990), this Court held that an appeal from an administrative proceeding is not a civil action. Pursuant to *Lowery*, Savala is not entitled to attorney fees under I.C. § 12-121.

Savala also asks for an award of attorney fees pursuant to I.C. § 12-117. That statute states, in relevant part, that:

> Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

The dispositive language is "involving as adverse parties . . . a county . . . and a person." It is true that this case involves the county and the Vickers as adverse parties. However, I do not interpret the adversity between the county and the Vickers as satisfying the adversity requirement as between the county and Savala. The county and Savala are not adverse, and thus the legislature did not intend for a party in Savala's position to receive an award under I.C. § 12-117.

Idaho Code § 12-117 initially allowed for an award of attorney fees to an adverse person and against a county. 1994 Idaho Sess. Laws, ch. 36, p. 55. It was later amended to allow for an

25

award to a county from an adverse person. 2000 Idaho Sess. Laws, ch. 241, p. 675. It has never been amended, however, to allow for an award to a person who is not adverse to the county in a case in which a county happens to be involved, and I would decline to infer that this was the intent of the Legislature. Thus I would hold that Savala is not entitled to an award of attorney fees under I.C. § 12-117.

Such a holding might seem to conflict with our decision in *Rural Kootenai Org., Inc. v. Bd. of Comm'rs*, 133 Idaho 833, 845, 993 P.2d 596, 608 (1999). In that case, a developer intervened on the side of the county, and the county lost on appeal. We stated that, pursuant to I.C. § 12-117, "[the intervenor] shall share the burden of appellate costs with the County." *Id.* at 846, 993 P.2d at 609. This holding may suggest that, since we levied costs against an intervenor who was not adverse to the county under I.C. § 12-117, we may also logically make an award of attorney fees to Savala under that same provision. The Court in *Rural Kootenai* was explicit, however, that it was only awarding costs and not attorney fees against the intervenor pursuant to I.C. § 12-117. And because costs are awarded to a prevailing party on appeal as a matter of course pursuant to I.A.R. Rule 40, it follows that the Court's citation to I.C. § 12-117 for the award of costs is dicta. Thus, I would hold that our decision in *Rural Kootenai* does not conflict with a denial of Savala's request for attorney fees under I.C. § 12-117.

In sum, I find that there is no statutory basis for any portion of the Vickers' petition for review and thus that they acted without a reasonable basis in fact or law in bringing it. I would accordingly remand with instructions to the district court to dismiss the petition and would award attorney fees to the Board but not Savala.

Justice TROUT, J., pro tem, **CONCURS.**