41 P.3d 739

In the Matter of the Driving Privileges
of Daryl A. Druffel.

Daryl A. DRUFFEL, Petitioner–
Respondent,

v.

STATE of Idaho, DEPARTMENT
OF TRANSPORTATION,
Respondent–Appellant.

No. 26529.

Supreme Court of Idaho,
Lewiston, October 2001 Term.

Jan. 18, 2002.

Hon. Alan G. Lance, Attorney General; Edwin L. Litteneker, Deputy Attorney General, Boise, for appellant. Edwin L. Litteneker argued.

James E. Siebe, Moscow, argued for respondent.

WALTERS, Justice.

This appeal comes before the Court following judicial review by the district court. The Idaho Department of Transportation (ITD) appeals the district court's decision which found ITD exceeded its statutory authority by prohibiting nonresidents from applying for restricted driving privileges and set aside the hearing officer's determination to the contrary. We hold that the ITD erred in refusing to allow the nonresident to apply for a restricted driving permit.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 6, 1999, Daryl Druffel, a Washington resident who drives in Idaho in the course of his employment, was arrested in Nez Perce County for driving while under the influence of alcohol pursuant to Idaho Code § 18–8004. He consented to take the Intoxilyzer test, which produced blood alcohol concentration ("BAC") levels exceeding the legal limit. A Notice of Suspension for Failure of Evidentiary Testing ("Notice of Suspension") was served upon Druffel and a copy was sent to the Idaho Department of Transportation ("ITD").

The Notice of Suspension advises a driver who fails the evidentiary tests that driving privileges will be suspended commencing 30 days from the date of service of the notice. The Notice of Suspension further provides that a driver may request an ITD administrative hearing on the suspension "to show cause why you failed the evidentiary test and why your license should not be suspended." On June 11, 1999, Druffel requested an administrative hearing with ITD alleging, among other things, that the Notice of Suspension was "deficient, vague, ambiguous and insufficient as to constitute proper notice as to what was expected, is to [sic] expected of or could happen to an out-of-state driver as regards the penalties/possibilities as a result of subscribing to the BAC test and blowing .08 or more." Druffel further alleged the Notice of Suspension was constitutionally deficient. The administrative hearing was held, and the ITD hearing officer issued his Findings of Fact and Conclusions of Law and Order sustaining the administrative license suspension and finding ITD's Notice and regulations were lawful and constitutional.

Druffel filed a petition for judicial review with the district court. Additionally, Druffel filed a motion to stay his suspension pending judicial review, which the district court granted. The matter was briefed and argued before the district court. The district court issued a memorandum decision on January 27, 2000, finding, among other things, that the parties' briefing did not address the issue of whether ITD had acted in excess of its statutory authority. As a result, the district court allowed further briefing on the issue. Following additional briefing and oral argument, a second opinion was issued on April 7, determining that ITD had exceeded its statutory authority by disallowing restricted driving privileges to a nonresident. Accordingly, the district court set aside the administrative license suspension. This appeal by ITD followed.

## ISSUES ON APPEAL

1. Did ITD exceed its statutory authority by prohibiting a nonresident from applying for restricted driving privileges?

2. Does the Idaho driver's licensing process of prohibiting restricted driving privileges to nonresidents violate the equal protection rights of nonresident drivers?

3. Did the district court err by setting aside Druffel's administrative license suspension instead of remanding the case to ITD?

4. Was IDAPA 39.02.70.400.01 and the language of the Notice of Suspension Advisory Form properly before the district court?

## STANDARD OF REVIEW

■ Idaho Code § 67–5240 provides that all proceedings by an agency that may result in the issuance of an "order" are governed by provisions of the Idaho Administrative Procedure Act (IDAPA). I.C. § 67–5201 *et seq.* Under the IDAPA, the ITD's decision may be overturned only where its findings: (a) violate statutory or constitutional provisions; (b) exceed the agency's statutory authority; (c) are made upon unlawful procedure; (d) are not supported by substantial evidence in the record; or (e) are arbitrary, capricious, or an abuse of discretion. I.C. § 67–5279(3). The party attacking the agency's decision, here Druffel, must first illustrate that ITD erred in a manner specified in Idaho Code § 67–5279(3), and then establish that a substantial right has been prejudiced. *Barron v. Idaho Dept. of Water Resources,* 135 Idaho 414, 417, 18 P.3d 219, 222 (2001) (citing *Price v. Payette County Bd. of Comm'rs,* 131 Idaho 426, 429, 958 P.2d 583, 586 (1998)).

■ In an appeal from the decision of the district court acting in its appellate capacity under the IDAPA, this Court reviews the agency record independently of the district court's decision. *Id.* (citing *Comer v. County of Twin Falls,* 130 Idaho 433, 437, 942 P.2d 557, 561 (1997); *Howard v. Canyon County Bd. of Comm'rs,* 128 Idaho 479, 480, 915 P.2d 709, 710 (1996)). The Court will not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5279(1). In other words, the agency's factual determinations are binding on the Court, even where there is conflicting evidence before the agency, so long as the determinations are supported by substantial competent evidence in the record. *See Barron,* 135 Idaho at 417, 18 P.3d at 222 (2001); *see also* I.C. § 67–5240.

## DISCUSSION

### I.

■ ITD asserts that the district court erred by finding ITD exceeded its statutory authority by prohibiting a nonresident from applying for restricted driving privileges. ITD contends that the district court further erred by concluding that I.C. § 18–8002A(9) does not differentiate between a resident's and a nonresident's ability to apply for restricted driving privileges. ITD avers that neither the Notice of Suspension nor its IDAPA provision are inappropriate and both are lawfully based given the statutory limitations placed upon them. ITD argues that since Idaho law exempts nonresidents from licensing, ITD may not extend driving privileges of any kind, including restricted driving privileges, to nonresidents. *See* I.C. §§ 49–301; 49–303. Further, ITD argues that the legislature clearly intended to leave the determination of restricted driving privileges to ITD.

Section 18–8002A(9) states

[A] person served with a notice of suspension for ninety (90) days pursuant to this section may apply to the department for restricted driving privileges, to become effective after the thirty (30) day absolute suspension has been completed. This request may be made any time after service of the notice of suspension. Restricted driving privileges will be issued for the person to travel to and from work and for work purposes, to attend an alternative high school, work on a GED, for postsecondary education, or to meet the medical needs of the person or his family if the person is eligible for restricted driving privileges.

I.C. § 18–8002A. Subsection (9) allows any person who has been served with the Notice of Suspension the ability to apply for restricted driving privileges so long as the conditions listed in the statute are met. I.C. § 18–8002A(9). ITD argues that nothing in subsection (9) nor any of the other subsections of I.C. § 18–8002A defines the eligibility requirements for restricted driving privileges. ITD argues the language "if the person is eligible for restricted driving privileges" at the end of subsection (9) allows it to determine the eligibility requirements. *See* I.C. § 18–8002A(10) (ITD "may adopt rules under the provisions of chapter 52, title 67, Idaho Code, deemed necessary to implement the provisions of this section.").

ITD contends this interpretation is supported by the rationale that each state independently licenses its citizens and that this license is given deference by the other states. For example, in Idaho, nonresidents are specifically exempted from licensing. I.C. § 49–303(13). The statute states, in pertinent part:

49–303. What persons shall not be licensed.

The department shall not issue any driver's license, instruction permit, driver's training permit, privileges or right to drive and if issued, may revoke or cancel the driver's license of a person who:

. . . .

(13) Is not a resident of the state of Idaho.

ITD's Notice of Suspension states, in pertinent part:

5. If you take and fail the evidentiary test(s):

A. I will seize your Idaho driver's license or permit if you have it in your possession, and if it is current and invalid, I will issue you a temporary permit. Temporary permits cannot be issued to drivers operating commercial vehicles or non-residents.

B. I will serve you with this *NOTICE OF SUSPENSION* that becomes effective thirty days from the date of service on this *NOTICE* suspending your driver's license or privileges. If this is your first failure of an evidentiary test your driver's license or driving privileges will be suspended for ninety (90) days, with absolutely no driving privileges during the first thirty (30) days. You may request restricted driving privileges for the remaining sixty (60) days of the suspension unless you are a non-resident . . .

ITD's regulations also specifically state that a nonresident is unable to apply for restricted driving privileges, unless the applicant is a nonresident active military personnel stationed in the state of Idaho. IDAPA 39.02.70.400.01.

The hearing officer found that the statute allowed ITD to adopt regulations to implement I.C. § 18–8002A. The hearing officer then determined that IDAPA 39.02.70 was a lawful provision and presumed constitutional despite the prohibition against issuing restricted driving privileges to nonresidents. On review of the hearing officer's determination, the district court found that ITD's argument presumed that there is no statutory distinction between driver's licensing and driver's privileges, whereas the statute clearly provides such a distinction. *See, e.g.,* I.C. § 18–02A(4). The district court held that the Notice of Suspension and ITD regulations exceeded ITD's statutory authority, and set aside the decision of the hearing officer.

At oral argument on this appeal, ITD argued that I.C. §§ 49–303 and 18–8002A were amended and enacted at the same time and must be applied in *pari materia.* However, Druffel contended that § 18–8002A was enacted subsequently to § 49–303 and controls this case because it was a more recent enactment.

The legislative history shows that Idaho Code § 49–303 was amended in 1996 to provide that ITD shall not issue driver's licenses to nonresidents. *See* H.B. 416, 53rd Leg., 2d Sess., 1996 Idaho Sess. Laws 1246–68; *see also* I.C. § 49–303(13). Idaho Code § 18–8002A(9) was amended by the legislature in 1997 to include the circumstances under which temporary driving privileges will be issued. *See* H.B. 284, 54th Leg., 1st Sess., 1997 Idaho Sess. Laws 689–96. The amendment added the language "[r]estricted driving privileges will be issued for the person to travel to and from work and for work purposes, to attend an alternative high school, work on a GED, for postsecondary education, or to meet the medical needs of the person or his family if the person is eligible for restricted driving privileges." *Id.; see also* I.C. § 18–8002A(9).

■ Statutes are construed under the assumption that the legislature was aware of all other statutes and legal precedence at the time the statute was passed. *Shay v. Cesler,* 132 Idaho 585, 587, 977 P.2d 199, 202 (1999); *George W. Watkins Family v. Messenger,* 118 Idaho 537, 540, 797 P.2d 1385, 1388 (1990). Therefore, the legislature knew at the time it was adding circumstances for

restricted driving privileges to I.C. § 18–8002A that I.C. § 49–303 contained a prohibition against issuing a driver's license to a nonresident. The legislature apparently chose not to prohibit nonresidents from applying for restricted driving privileges as it did for a driver's license. Further, when amending I.C. § 18–8002A(9), the legislature added the circumstances to which restricted driving privileges may be granted by ITD; it did not leave that determination to ITD. H.B. 284, 1997 Idaho Sess. Laws 689 ("To provide the circumstances under which temporary driving privileges will be issued.").

There is a statutory distinction between driver's licensing and driver's privileges. Idaho Code § 49–303 only prohibits ITD from issuing a driver's license to nonresidents, it does not prevent ITD from issuing nonresident driving privileges. I.C. § 49–115(3) defines nonresident operating privileges as "the privilege conferred upon a nonresident by the laws of this state pertaining to the operation of a motor vehicle, or the use of a vehicle owned by that person, in this state."

The language of I.C. § 18–8002A(9) does not allow ITD to differentiate between a resident's and nonresident's ability to apply for restricted driving privileges. Idaho Code § 18–8002A(4) clearly distinguishes between driver's licenses, driver's privileges and nonresident driver's privileges, where subsection (9) does not. Subsection (9) states that "a person served with a notice of suspension . . . may apply to the department for restricted driving privileges . . . ." rather than breaking down each type of license or privilege as in subsection (4). I.C. § 18–8002A. The statute as a whole envisions the suspension of nonresident driving privileges. Nonresidents can apply for restricted driving privileges under I.C. § 18–8002A(9) so long as the nonresident applicant meets one of the circumstances listed in subsection (9).

This Court holds ITD acted in excess of its statutory authority in refusing to allow Druffel to apply for restricted driving privileges.

## II.

ITD asserts that the district court erred when it intimated that the prohibition of restricted driving privileges to nonresidents would violate the equal protection clause.

Druffel responds by stating the equal protection clause bars discrimination against citizens of another state where there is no compelling government interest; a nonresident should be afforded the same restricted driving privileges as a resident under I.C. § 18–8002A. Because we hold that the statute, I.C. § 18–8002A(9), does not preclude a nonresident from applying for restricted driving privileges, it is not necessary to address the equal protection issue.

## III.

ITD asserts that the district court erred by failing to remand Druffel's suspension to ITD for further action consistent with the district court's opinion rather than just setting aside the hearing officer's decision.

■ The arresting officer observed Druffel's erratic driving pattern, noticed Druffel's speech was slurred and smelled a strong odor of alcohol coming from Druffel, and watched Druffel fail the field sobriety tests. Druffel then consented to the Intoxilizer test, which produced BAC results greater than the legal limit. In addition, the calibration, certification and quality control of the Intoxilizer test all met the required standards thus the affidavit of the arresting officer was sufficient to shift the burden to Druffel. Although the actions of ITD were found to be in contravention of the statute, the record supports that Druffel was in violation of I.C. § 18–8004.

■ Idaho Code § 67–5279 states "if the agency action is not affirmed, it shall be set aside in whole or in part, and remanded for further proceedings as necessary." The district court determined ITD had exceeded its statutory authority and set aside the hearing officer's decision. It does not appear that Druffel's suspension was reversed. By reversing the hearing officer's decision, the district court effectively remanded the case back to ITD. Had the state of Idaho (acting as the ITD) not appealed to this Court, the district court would have properly remanded the case back to ITD for further consideration. Druffel, then, could have applied for restricted driving privileges as directed by

I.C. § 18–8002A. We hold that the ITD has not shown any error in this regard.

### IV.

 ITD argues that the district court erred by considering the effect of IDAPA 39.02.70.400.01 and the Notice of Suspension without an order from ITD denying Druffel's application for restricted driving privileges. To support this argument, ITD asserts there is no relationship between Druffel's evidentiary test failure and the decision that he is not eligible for restricted driving privileges.

Druffel was contesting a term of his suspension (i.e. the inability to apply for restricted driving privileges) as well as the sufficiency of the Notice of Suspension, thereby making the Notice of Suspension properly before the district court. IDAPA 39.02.70.400 is the regulation implemented by ITD that governs restricted driving privileges. This comes into play when determining if the Notice of Suspension is sufficient to give notice of the ramifications of Druffel's suspension. The regulation also aids in the determination of whether the statute and the Notice of Suspension are conflicting. Further, Druffel was contesting the findings of fact and conclusions of law made by the hearing officer in his petition for judicial review. The findings and conclusions made by the hearing officer discuss the Notice of Suspension and IDAPA 39.02.70.

This Court holds that the district court did not err by considering the Notice of Suspension and IDAPA 39.02.70.400.

### CONCLUSION

This Court holds that ITD exceeded its statutory authority by prohibiting nonresidents from applying for restricted driving privileges pursuant to I.C. § 18–8002A(9); the constitutionality of the statute need not be determined by this Court. Druffel, upon remand of this case to ITD, should be afforded the opportunity to apply for restricted driving privileges. We, further, hold that the district court did not err by considering the Notice of Suspension and IDAPA 39.02.70.

Costs on appeal are awarded to Druffel. No award of attorney fees is allowed, as none was requested.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN, concur.