IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37242

PIONEER IRRIGATION DISTRICT, )
 )  **Boise, December 2011 Term**
 Plaintifff-Counterdefendant-Respondent, )
 )  **2012 Opinion No. 74**
v. )
 )  **Filed: April 27, 2012**
CITY OF CALDWELL, )
 )  **Stephen Kenyon, Clerk**
 Defendant-Counterclaimant-Appellant. )

---

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

The district court's grant of partial summary judgment is <u>affirmed</u> in part, <u>reversed</u> in part and the matter is <u>remanded</u> for proceedings consistent with this opinion.

Hamilton, Michaelson & Hilty, LLP, Nampa, and Holland & Hart, LLP, Boise, for appellant. Eric Stidham argued.

Moffatt, Thomas, Barrett, Rock & Fields, Boise, for respondent. Brad Williams argued.

---

HORTON, Justice.

In 2008, Pioneer Irrigation District (Pioneer) filed suit against the City of Caldwell (the City), seeking declaratory and injunctive relief, as well as the removal of urban stormwater discharge conduits constructed by the City without Pioneer's authorization. The district court granted summary judgment in favor of Pioneer. The court held that Pioneer held exclusive interests in its irrigation easements and rights-of-way such that Pioneer could maintain trespass claims against the City. The court also held that I.C. § 42-1209 granted Pioneer the power to remove encroachments constructed without its permission that it deemed to unreasonably or materially interfere with its easements and rights-of-way. The district court held that review of certain decisions by the irrigation district would be limited to whether they were arbitrary and capricious or reached in an unreasonable manner. The City moved for permissive appeal, which

1

motion the district court granted. We affirm the decision of the district court, except for its holding that irrigation easements and rights-of-way are exclusive interests.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pioneer instituted this action in early 2008, seeking declaratory and injunctive relief against the City. Pioneer alleged that by adopting a new municipal storm water management manual, the City had caused or permitted developers to install storm water discharge pipes such that municipal storm water was being discharged into Pioneer's irrigation delivery and drainage facilities without Pioneer's permission. Pioneer alleged that these discharge pipes unreasonably and materially interfered with its irrigation easements and rights-of-ways. Pioneer sought several judicial declarations, including that Pioneer was authorized to both remove and prohibit the future construction of unauthorized, unreasonable encroachments pursuant to I.C. § 42-1209. Pioneer also sought injunctive relief, alleging that it enjoyed an exclusive right to possession of its irrigation facilities and that municipal storm water runoff events were a trespass upon those facilities.

Relevant to this appeal, the parties filed cross-motions for summary judgment. The district court granted portions of Pioneer's motion, holding that where Pioneer exercised its discretion under I.C. § 42-1209 to deny a proposed encroachment as an unreasonable or material interference, a court's review of that exercise of discretion is limited to whether the decision was reached in an unreasonable manner, arbitrary and capricious, or based upon findings that were clearly erroneous. The court also held that I.C. § 42-1209 permits the owner of an irrigation easement or right-of-way to engage in self-help to remove an encroachment that was constructed without permission and unreasonably or materially interfered with the easement or right-of-way. The district court held that the owner of an irrigation easement or right-of-way enjoys an exclusive interest therein, and on those grounds denied the City's motion for summary judgment seeking dismissal of Pioneer's trespass claims.

Following the district court's grant of the City's I.A.R. 12 motion for permissive appeal, this Court granted the City leave to appeal.

## II. STANDARD OF REVIEW

We review a trial court's grant of summary judgment under the same standard applied by the trial court. *Read v. Harvey*, 141 Idaho 497, 499, 112 P.3d 785, 787 (2005). A reviewing court will construe all disputed facts and make all reasonable inferences in favor of the nonmoving

2

party. *Sprinkler Irr. Co. v. John Deere Ins. Co.*, 139 Idaho 691, 695-96, 85 P.3d 667, 671-72 (2004). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

### III. ANALYSIS

**A. This Court's holding is limited to those issues raised in the City's motion for permissive appeal.**

The City attacks the district court's holdings on a variety of grounds, including errors in statutory interpretation, the constitutionality of the district court's statutory interpretation, and lack of specificity regarding the easements' scope. Pioneer similarly defends on a variety of grounds, including statutory interpretation, the application of res judicata to preclude collateral challenges to Pioneer's ownership interests, and judicial estoppel of claims that the judgment is invalid because it does not include all affected servient landowners.

However, review of a permissive appeal must "address only the precise question that was framed by the motion and answered by the trial court." *Winn v. Frasher*, 116 Idaho 500, 501, 777 P.2d 722, 723 (1989). In the present case, the City moved for permissive appeal of the court's grant of partial summary judgment. The district court granted that motion. The City's and the district court's express statements of the issues to be addressed by the permissive appeal were nearly verbatim. The district court phrased those issues as follows:

1. Idaho Code section 42-1209 vests Pioneer with the initial discretion to determine whether an encroachment is likely to unreasonably or materially interfere with the use and enjoyment of its irrigation or drainage easements or rights-of-way, and to deny permission for the encroachment on those grounds. Judicial review of Pioneer's determination and decision is limited to (a) whether Pioneer's denial of permission to encroach was arbitrary and capricious or based on clearly erroneous findings, and (b) whether Pioneer's decision-making process was reasonable.

2. Idaho Code section 42-1209 authorizes Pioneer to enforce the removal of any encroachments installed after the effective date of section 42-1209 that Pioneer determines materially and unreasonably interfere with the use and enjoyment of its irrigation and drainage easements or rights-of-way, at the expense of the encroaching party, subject to certain limitations:

   A. Pioneer must initially request removal of the encroachment by the encroaching party;

   B. Pioneer's right of self-help (i.e., in lieu of pursuing a judicial remedy) to remov[al] of the encroachment must be accomplished within the

3

borders of its easement or right-of-way and without a breach of the peace; and

C. Judicial review of Pioneer's determination and decision is limited to (a) whether Pioneer's decision to request removal of an existing encroachment was arbitrary and capricious or based on clearly erroneous findings, and (b) whether Pioneer's decision-making process was reasonable.

3. That Pioneer Irrigation District enjoys exclusive rights in its primary easements and rights-of way under Idaho Code sections 42-1102 and 1209.

We are bound to address only these issues. Since several of the parties' claims and defenses on appeal are irrelevant to these precise questions, we do not address them here.

**B. Under I.C. § 42-1209, an irrigation delivery entity's denial of permission to construct an encroachment is an exercise of discretion subject to limited review by a court.**

The City asserts that the question whether a proposed encroachment constitutes an unreasonable or material interference is a question that should be resolved by a trier of fact. The district court disagreed, reasoning that irrigation districts are quasi-municipal corporations engaged in the proprietary role of providing irrigation for landowners' benefit, and that thus the scope of a civil challenge to an irrigation entity's denial of permission to encroach must be limited to whether (a) the denial was arbitrary and capricious or based on clearly erroneous findings, or (b) the entity's decision-making process was unreasonable.

To resolve this issue, we must derive legislative intent, looking first to the language of I.C. § 42-1209. *Hayden Lake Fire Prot. Dist. v. Alcorn*, 141 Idaho 307, 312, 109 P.3d 161, 166 (2005). Where a statute is unambiguous, its plain language controls. *Id.* If a statute is ambiguous because more than one reasonable interpretation exists, we look to rules of statutory construction for guidance. *Payette River Prop. Owners Ass'n v. Bd. of Comm'rs of Valley Cnty.*, 132 Idaho 551, 557, 976 P.2d 477, 483 (1999). In the event that this Court is required to engage in statutory construction, we may ascertain legislative intent from the statute's context, the public policy in support of the statute, and the statute's legislative history. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999).

Idaho Code § 42-1209 was enacted in 2004. 2004 Idaho Sess. Laws, ch. 179, § 3, at 563. The statute expressly recognizes irrigation easements and rights-of-way as "essential" to the operation of irrigation districts and other irrigation entities, providing:

4

Accordingly, no person or entity shall cause or permit any encroachments onto the easements or rights-of-way . . . without the written permission of the irrigation district . . . owning the easement or right-of-way, in order to ensure that any such encroachments will not unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way. Encroachments of any kind placed in such easement or right-of-way, without such express written permission shall be removed at the expense of the person or entity causing or permitting such encroachments, upon the request of the owner of the easement or right-of-way, in the event that any such encroachments unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way. . . .

I.C. § 42-1209.

It is evident from the plain language of the statute that merely providing notice to an irrigation entity of an encroachment does not permit a party to construct an encroachment. Rather, I.C. § 42-1209 requires "written permission" from the irrigation district in order to "ensure that any such encroachments will not unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way." The plain language of the statute grants irrigation entities the authority to evaluate the impact of proposed encroachments and grant or withhold permission based on that evaluation. To hold otherwise would effectively eviscerate irrigation entities' express power to grant or deny permission to construct an encroachment. Accordingly, we hold that the owner of an irrigation easement or right-of-way is vested with the discretion to determine whether an encroachment constitutes an unreasonable or material interference, and based on that exercise of discretion, is vested with the authority to grant or deny a requested encroachment.[1]

We next examine the scope of legal challenges to an irrigation entity's exercise of discretion regarding encroachments. The City asserts that under I.R.C.P. 84(a)(1),[2] the irrigation entities' decisions are not entitled to limited judicial review because there is no statute providing a right of judicial review. However, I.R.C.P. 84(a)(1) is inapplicable here. Review of such decisions is not judicial review of an agency's action. Rather, courts will be called upon to

---

[1] The determination of "unreasonable or material interference" is not restricted to the physical impediment that may be created at the point of encroachment. Rather, the ditch owner may take into account the impact of the encroachment or encroachments upon the entire water delivery system. It is not difficult to envision encroachments that do not present a physical impediment to the operation or maintenance of a ditch, such as drainage diversions, which in times of heavy precipitation would permit introduction of a quantity of water exceeding the carrying capacity of the system. Likewise, one encroachment, by itself, may not cause unreasonable or material inference while multiple similar encroachments may.

[2] In part, I.R.C.P. 84(a)(1) states that "[a]ctions of state agencies or officers or actions of a local government, its officers or its units are not subject to judicial review unless expressly authorized by statute."

5

evaluate an irrigation district's exercise of discretion in some form of civil action. Without attempting to identify all possible actions where these decisions may be reviewed, it is evident that such actions may well include those seeking injunctive relief or recovery of the costs of removal of an offending encroachment.

This Court has previously recognized that some discretionary determinations of irrigation districts are subject to limited review. *See Viking Const., Inc. v. Hayden Lake Irr. Dist.*, 149 Idaho 187, 194, 233 P.3d 118, 125 (2010) (irrigation district's established method for valuing connection fees subject to limited review). Further, the ability to exercise the discretion that I.C. § 42-1209 vests in irrigation entities is one means by which the entities are able to meet the various obligations imposed upon them by statute. *See* I.C. § 42-1201 (to the extent capable, keep irrigation ditches sufficiently full to meet the requirements of those entitled to water); I.C. § 42-1202 (maintain the good order and repair of irrigation ditches, canals, and conduits); I.C. § 42-1203 (maintain embankments in order to prevent waste of irrigation water); I.C. § 42-1204 (duty to maintain waterworks in good repair in order to avoid damage to others). Ditch owners face prospective liability for failure to meet these statutory obligations. *Stephenson v. Pioneer Irr. Dist.*, 49 Idaho 189, 194, 288 P. 421, 422 (1930) (owner of an irrigation ditch faces liability for negligent construction, maintenance, and operation thereof).

We hold that an irrigation entity's determination whether to grant permission to construct an encroachment may be reviewed only to determine whether the decision-making process was reasonable, the determination was arbitrary and capricious, or the findings upon which the determination was reached were clearly erroneous. This conclusion rests upon two considerations. First, judicial deference to these decisions is consistent with the Legislature's determination that irrigation entities should possess the authority to make such decisions. Second, a deferential approach recognizes that irrigation entities are required to satisfy significant statutory obligations and face exposure to liability if they fail to fulfill those obligations. Thus, we affirm the district court's decision on this issue.

**C. Under some circumstances, an irrigation delivery entity may remove encroachments at the encroaching party's expense and without prior judicial intervention, and review of the decision that an unpermitted encroachment must be removed is limited to whether the decision-making process was reasonable and whether the decision was arbitrary and capricious or based upon clearly erroneous findings.**

1. The right to self-help

The City contends that an irrigation entity must initiate judicial proceedings in order to effect an encroachment's removal. The district court held that irrigation entities may exercise self-help to remove encroachments constructed after the effective date of I.C. § 42-1209 for which written permission was not obtained and that unreasonably or materially interfere with the use and enjoyment of an irrigation right-of-way. We affirm the district court and hold that, under certain circumstances, I.C. § 42-1209 authorizes the owner of an irrigation right-of-way to remove an encroachment without prior judicial approval.

We first look to the plain language of the statute to derive legislative intent. Four conditions must be satisfied before an encroachment "shall" be removed. First, the encroachment must have been constructed after the effective date of I.C. § 42-1209, as the statute's provision for "such express written permission," which clearly references preceding language in the statute, was not a requirement prior to that date. Second, the encroachment must have been constructed without permission. *Id.* Third, the encroachment must unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way. *Id.* Fourth, the owner must request that the party responsible for the encroachment remove it. *Id.*

Upon satisfaction of these requirements, the statute provides that the encroachment "shall be removed at the expense of" the encroaching party. *Id.* In the event that the party responsible for the encroachment accedes to the demand for its removal, the statute clearly places the financial burden for the cost of the removal upon the encroaching party.

The statute is silent, however, as to what happens when the party responsible for the encroachment fails to act upon the demand within a reasonable time.[3] The question then is whether the irrigation entity must go to court in order to vindicate its right to cause the removal of the encroachment, or whether it may act first and seek compensation later. When confronted with statutory silence as to an appropriate remedy, this Court is "free to apply general rules of statutory construction to ascertain" legislative intent. *Bilow v. Preco, Inc.*, 132 Idaho 23, 32, 966 P.2d 23, 32 (1998). When engaging in statutory construction, "the Court should consider not only the literal words of the statute, but also the reasonableness of proposed constructions, the public policy behind the statute, and its legislative history in order to discern and implement the

---

[3] If the party responsible for the encroachment is not afforded reasonable time to respond to the request, then the statutory requirement of a "request" for removal would be nullified. What constitutes a "reasonable time" to respond to the request is clearly dependent upon circumstances. A request for removal made during spring or summer months when the ditch is full may well require an immediate response. Conversely, during winter months, when water is not flowing, there may not be a need for immediate action.

intent of the legislature." *Gonzalez v. Thacker*, 148 Idaho 879, 881, 231 P.3d 524, 526 (2009) (citing *Hayden Lake Fire Prot. Dist. v. Alcorn,* 141 Idaho 388, 398–99, 111 P.3d 73, 83–84 (2005) and *Kelso & Irwin, P.A. v. State Ins. Fund,* 134 Idaho 130, 134, 997 P.2d 591, 595 (2000)).

The policy advanced by I.C. § 42-1209 is clear: given the essential role that irrigation facilities play in this state, people must not construct encroachments that unreasonably or materially interfere with their operation. If irrigation entities are forced into litigation in order to secure the removal of encroachments constructed without permission and which unreasonably or materially interfere with the use and enjoyment of their easements or rights-of-way, they will be forced to wait weeks, if not months, to cause the removal of encroachments that ought not have been constructed in the first instance. We conclude that the policy underlying I.C. § 42-1209 supports the right of irrigation entities to remove such encroachments without first resorting to the courts.

Interpreting I.C. § 42-1209 as authorizing irrigation entities to remove encroachments that have been constructed without permission and which unreasonably or materially interfere with the use and enjoyment of the easement or right-of-way is consistent with the common law rule that predated the enactment of the statute. An "easement owner has a right to remove obstructions unreasonably interfering with use of the easement, so long as there is no breach of the peace." *Carson v. Elliott*, 111 Idaho 889, 891, 728 P.2d 778, 780 (Ct. App. 1986). "Statutes are construed under the assumption that the legislature was aware of all other statutes and legal precedence at the time the statute was passed." *Druffel v. State, Dep't of Transp.*, 136 Idaho 853, 856, 41 P.3d 739, 742 (2002). Accordingly, we presume that the Legislature knew that the self-help remedy was available to irrigation easement owners when it enacted I.C. § 42-1209. The language of the statute does not demand a construction in abrogation of the common law.

Further, we note that this Court must read I.C. § 42-1209 in the context of the statutory scheme that prescribes the rights and obligations of irrigation easement and right-of-way owners. *See* I.C. §§ 42-1201 – 1204. In light of the duties that the Legislature has imposed upon irrigation entities, in some circumstances it will be imperative that those entities have the authority to act expeditiously, and without prior court intervention, to address exigencies (and potential liability to third parties) created by encroachments. An interpretation of I.C. § 42-1209 that authorizes irrigation entities to remove unreasonable encroachments that have been constructed without

8

permission advances the legislative objective of allowing these entities to meet the needs of water users and protect the persons and property of third parties.

We hold that I.C. § 42-1209 does not modify the easement or right-of-way owner's common law right to self-help. Rather, the statute codifies the owner's right to recover the cost of removing unpermitted encroachments that unreasonably or materially interfere with the use and enjoyment or the easement or right-of-way. We therefore affirm the district court's decision on this issue.

    2.    <u>The standard of review of challenges to an irrigation entity's decision to demand removal of an encroachment or remove an encroachment without prior judicial approval</u>

As with the standard of review of an irrigation entity's decision to deny permission to encroach upon its easement or right-of-way, the parties disagree as to the standard to be applied when an irrigation entity demands removal of an encroachment or exercises its right to remove an encroachment that has been constructed without permission. The district court concluded that review of such decisions is limited to determining whether the decision-making process was reasonable and whether the decision was arbitrary and capricious or based upon clearly erroneous findings.

The considerations that led us to conclude that there is limited review of an irrigation entity's decision to grant or withhold permission to construct an encroachment are applicable here. The Legislature has vested irrigation entities with discretion to grant or deny permission to construct an encroachment, and the exercise of that discretion is reviewed only to determine whether the decision-making process was reasonable, and whether the decision was arbitrary and capricious or based upon clearly erroneous findings. Considering the statutory obligations imposed upon irrigation entities and the potential liability that may result from failure to fulfill those obligations, it would be unreasonable to hold that a party who has constructed an encroachment in violation of its statutory obligation to obtain permission may thereby nullify the discretionary authority that the Legislature has conferred upon irrigation authorities. *See Turner v. Washtenaw Cnty. Rd. Comm'n*, 467 N.W.2d 4, 4-5 (Mich. 1991) (review of road commission's statutorily-authorized removal of encroachment limited to whether it reasonably exercised its discretion); *Devine v. City of Seward*, 258 P.2d 302, 304-05 (Kan. 1953) (challenge to city's self-help removal of encroachment limited to whether the decision to remove was arbitrary, capricious, or not made in good faith). We hold that irrigation entities' decisions to request

9

removal of encroachments constructed without permission or to thereafter remove offending encroachments shall be subject to limited review to determine whether a reasonable decision-making process was employed, and whether the decision was arbitrary and capricious or based upon clearly erroneous findings. We therefore affirm the decision of the district court as to this issue.

**D. An irrigation delivery entity does not enjoy exclusive rights in its primary easements and rights-of-way.**

The district court held that, pursuant to I.C. §§ 42-1102 and 1209, the owners of irrigation easements or rights-of-way have a primary and exclusive right to possession of irrigation conduits. We disagree.

Before turning to these particular statutes, it is appropriate to look at this Court's earlier statements explaining the scope of rights of a ditch owner.[4] In Idaho, the common law has long recognized that irrigation easements and rights-of-way are not exclusive. *E.g.*, *City of Bellevue v. Daly*, 14 Idaho 545, 550-51, 94 P. 1036, 1038-39 (1908) (owner of servient estate not liable for pollution caused to irrigation waters by his cattle in the ordinary course of husbandry and likewise not responsible for constructing a fence to protect the irrigation easement or right-of-way); *Coulsen v. Aberdeen-Springfield Canal Co.*, 47 Idaho 619, 630-31, 277 P. 542, 546 (1929) (irrigation easement owner not entitled to exclusive possession of property upon which easement is located and cannot assert trespass where servient estate owner's cattle enter easement; rather where easement owner fails to adequately maintain irrigation conduit and injury to servient estate owner's cattle results, easement owner is liable); *Pioneer Irr. Dist. v. Smith*, 48 Idaho 734, 739, 285 P. 474, 476 (1930) (irrigation district's right-of-way is not exclusive and servient landowner's reasonable, ordinary, and usual farming of hogs near and on easement is permissible; irrigation easement owner is responsible for damages to irrigation conduit resulting therefrom); *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003) (owners of servient estate "entitled to make any uses of their property that d[o] not unreasonably interfere with the District's enjoyment of its [irrigation] easement."). In fact, this Court has expressly recognized railroad easements as distinguishable from irrigation and other types of easements and rights-of-way, and held that only railroad easements are exclusive. *Lake CDA*

---

[4] "Although the person who has an easement for a ditch across the land of another does not thereby gain legal title to any portion of that land, *Reynolds Irrig. Dist. v. Sproat,* 69 Idaho 315, 206 P.2d 774 (1948), the owner of such an easement is often called the 'owner' of the ditch." *Camp v. E. Fork Ditch Co., Ltd.*, 137 Idaho 850, 857, 55 P.3d 304, 311 (2002).

*Invest., LLC v. Idaho Dep't of Lands*, 149 Idaho 274, 281-82, 233 P.3d 721, 728-29 (2010)[5] (citing *Coulsen*, 47 Idaho at 627-28, 277 P. at 544-45).

As previously noted, the Legislature is presumed to be aware of this Court's earlier decisions. *Druffel*, 136 Idaho at 856, 41 P.3d at 742. Certainly, our Legislature knows how to abrogate decisions from this Court. *See*, *e.g.*, Act of March 4, 2010, ch. 29, 2010 Idaho Sess. Laws 49, 49–50 (abrogating holding of *Rammell v. Idaho State Dep't of Agric.,* 147 Idaho 415, 422–23, 210 P.3d 523, 530–31 (2009)). This Court will not interpret a statute as abrogating the common law unless it is evident that was the Legislature's intent. *Statewide Const., Inc. v. Pietri*, 150 Idaho 423, 429, 247 P.3d 650, 656 (2011), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, 151 Idaho 889, 265 P.3d 502 (2011). *See also Baker v. Ore–Ida Foods, Inc.,* 95 Idaho 575, 583, 513 P.2d 627, 635 (1973) ("Where the clear implication of a legislative act is to change the common law rule we recognize the modification because the legislature has the power to abrogate the common law."). Nothing in the language of I.C. § 42-1209 indicates legislative intent to overturn our longstanding precedent that ditch owners' rights are non-exclusive.

Further, this Court has previously addressed whether I.C. § 42-1102 expands the rights of irrigation easement holders. In *Nampa & Meridian Irrigation District v. Washington Federal Savings*, 135 Idaho 518, 20 P.3d 702 (2001), this Court rejected the irrigation district's claim that the statute expanded the rights of ditch owners. *Id*. at 522, 20 P.3d 706 ("We conclude that neither the provisions expressed in [a channel change easement] nor the quoted language of the statute . . . operate to create a greater right"). Instead, we stated: "I.C. § 42-1102 only contemplates a right-of-way for cleaning, maintaining, and repairing canals. The statute provides notice to owners of land that the owner of the ditch or canal has the right-of-way, and serves to clarify what the right-of-way includes." *Id*. at 524, 20 P.3d at 708. Although the issue presented in *Nampa & Meridian Irrigation District* related to a dispute between the ditch owner and the owner of the servient estate, this Court rejected the suggestion that I.C. § 42-1102 expanded the rights of ditch owners: "Missing from the statute is any suggestion that owners of the right-of-way may, in cleaning, maintaining, or repairing the canal or ditch, restrict the servient landowner's use of the right-of-way because of safety concerns." *Id*.

---

[5] Although Pioneer challenges the application of this Court's precedent to the matter at hand on the ground that the precedent predates the 2004 enactment of I.C. § 42-1209, we decided *Lake CDA Investments* in 2010.

As the statutes lack a clear expression of legislative intent to abrogate the common law and grant easement owners an exclusive right to possession, we conclude that the district court erred in holding that owners of irrigation easements and rights-of-way have an exclusive possessory interest in those easements.

**E. Neither party is entitled to attorney fees on appeal.**

The City requests attorney fees on appeal pursuant to both I.C. §§ 12-117(1) and 12-121. Pioneer requests attorney fees pursuant to I.C. § 12-121. Under I.C. § 12-117(1), the prevailing party in an administrative or civil judicial proceeding between a state agency or political subdivision and a person is entitled to attorney fees if "the nonprevailing party acted without a reasonable basis in fact or law." Under I.C. § 12-121 and I.R.C.P. 54(e)(1), a court may award a prevailing party attorney fees if "the case was brought, pursued or defended frivolously, unreasonably, or without foundation . . . ." Since each party has only prevailed in part on this appeal, we decline to award attorney fees to either party.

### IV. CONCLUSION

We affirm a portion of the district court's grant of partial summary judgment on the grounds that, pursuant to I.C. § 42-1209, an irrigation right-of-way owner's determination that an encroachment unreasonably or materially interferes with the right-of-way shall only be overturned if it is arbitrary and capricious, was based upon clearly erroneous findings, or was not the product of a reasonable decision-making process. We likewise affirm the district court's grant of partial summary judgment on the grounds that, pursuant to I.C. § 42-1209, the owner of an irrigation easement or right-of-way may engage in self-help to remove an encroachment that it has determined unreasonably or materially interferes with its right-of-way, and hold that such action is reviewed under the same standard applicable to the denial of permission to construct an encroachment. However, we reverse the district court's grant of partial summary judgment holding that owners of irrigation easements and rights-of-way enjoy exclusive rights of possession. As each party has prevailed in part, we decline to award attorney fees and costs. This matter is remanded to the district court for proceedings consistent with this opinion.

Justices EISMANN and W. JONES **CONCUR**.

J. JONES, Justice, concurring in part and dissenting in part.

12

I concur in Parts III.A, III.D, and III.E of the Court's opinion, but dissent with regard to Parts III.B and III.C. I am unable to read I.C. § 42-1209 as requiring deferential review of the decisions of irrigation entities or authorizing irrigation entities to resort to self-help in removing encroachments.

There is no language in I.C. § 42-1209 that in any way addresses the decision-making procedure to be employed by irrigation entities or how their decisions are to be considered by the courts. Had the Legislature intended special procedures to be employed under this statute, it undoubtedly would have provided for such procedures. The Legislature is certainly capable of providing for limited review of certain types of decisions and has specifically done so when it deems appropriate. For decisions of State agencies, the Legislature has provided a deferential standard of review in the Idaho Administrative Procedure Act (IAPA). *See* Chapter 52, Title 67, Idaho Code. However, such review does not apply to local governments, absent legislative direction. As we noted in *Gibson v. Ada County Sheriff's Dept.*, 139 Idaho 5, 7−8, 72 P.3d 845, 847−48 (2003):

> Though the IAPA and its judicial review provisions are generally inapplicable to local government actions, a statute may provide for judicial review of local government actions pursuant to the IAPA. Absent a statute invoking the IAPA's judicial provisions, local government actions may not be reviewed under the IAPA.

The Legislature has taken specific action to bring decisions of local planning and zoning agencies within the review provisions of IAPA. I.C. §§ 67-6519 to 67-6521. The limited review provided for in the Court's opinion is, in effect, comparable to the arbitrariness standard specified by the Legislature in I.C. § 67-5279 for State agency decisions.

This Court has recognized the discretion of irrigation districts to regulate their internal affairs. In *Viking Const., Inc. v. Hayden Lake Irr. Dist.*, 149 Idaho 187, 194, 233 P.3d 118, 125 (2010), we indicated that an irrigation district's established method of valuing connection fees is subject to limited review. However, even then the Court in *Viking* vacated a grant of summary judgment in favor of the irrigation district where the record disclosed a genuine issue of material fact as to whether a connection fee was reasonably determined. *Id.* at 195, 233 P.3d at 126. And, it is important to note that the limited review was confined to an issue dealing with the internal governance of the irrigation district, rather than a matter that implicated the rights or interests of outside parties.

While irrigation districts have been characterized as quasi-municipal or public corporations, they are not to be confused with true municipal corporations, nor assumed to have the powers of such corporations. The nature of irrigation districts was thoroughly analyzed in *Lewiston Orchards Irr. Dist. v. Gilmore*, 53 Idaho 377, 23 P.2d 720 (1933), wherein this Court held such districts not to be exempt from property tax like municipal corporations under Article VII, Section 4 of the Idaho Constitution. *Id.* at 383, 23 P.2d at 722. The Court summarized:

> It follows that the primary purpose of an irrigation district is limited to the conducting of its business for the private benefit of the land owners within the district by the acquisition of water rights and the irrigation of lands within its boundaries; and that the land owners within the district are the members of the corporation, control its affairs, and are primarily benefited by its operations. It is likewise true that irrigation districts have been endowed with certain incidental municipal powers necessary to its proper functioning, such as the election of its officers and directors, the levy of assessments for bond, interest, maintenance and operation and other like authorized purposes, and the equalization and collection of such assessments, which incidental municipal powers have resulted in its classification as a *quasi*-municipal or municipal corporation in connection with the construction of statutes and constitutional provisions involving the exercise of such municipal powers.
>
> We have carefully analyzed and compared the foregoing authorities and others to similar effect and have reached therefrom the conclusion that an irrigation district is a public corporation having such incidental municipal powers as are necessary to its internal management and the proper conduct of its business. Its primary purpose is the acquisition and operation of an irrigation system as a business enterprise for the benefit of land owners within the district, such property being held in trust for them in a proprietary capacity, while *secondarily and incidentally, certain municipal powers have been conferred for its government and regulation*, and when this is borne in mind, any seeming confusion in or conflict with the authorities holding that an irrigation district is a municipal or *quasi*-municipal corporation within the meaning of certain statutes and constitutional provisions disappear.

*Id.* at 381−82, 23 P.2d at 722 (emphasis added).

Further, in *Brizendine v. Nampa Meridian Irr. Dist.*, we determined that irrigation districts are not municipal or public corporations for purposes of the Idaho Tort Claims Act, explaining:

> An essential element of a municipal or public corporation is a corporate purpose deemed to be for the welfare of the general public—"a public corporation is one that is created for political purposes with political powers to be exercised for purposes connected with the public good in the administration of civil

14

government." However, *an irrigation district's primary purpose is the acquisition and operation of an irrigation system as a business enterprise for the benefit of its shareholders*.

97 Idaho 580, 587, 548 P.2d 80, 87 (1976) (internal citations omitted) (emphasis added).

It is certainly reasonable for an irrigation district to have discretion to regulate its own affairs. Providing limited review of such governance decisions is akin to the manner in which the Court considers governance decisions of private businesses. Both the Court and the Legislature have adopted versions of the business judgment rule, which allows business corporations to make decisions within the powers of the corporation and the directors' honest business judgment, without court interference. *McCann v. McCann*, No. 37547, 2012 W.L. 798581, at *4 (Idaho March 13, 2012); I.C. § 30-1-831. However, decisions of a business corporation that affect the rights or interests of outside parties would not be treated by the courts with the same deference.

I am aware of no case decided by this Court that grants a deferential standard of review for decisions of an irrigation district that affect the rights or interests of outside parties, let alone any cases in which a deferential standard of review is granted for such decisions of private parties, such as Carey Act operating companies, non-profit irrigation entities, and lateral ditch associations, none of which are even quasi-governmental in nature. The Court's opinion cites *Viking Construction* for the proposition that limited review may apply to some discretionary determinations of irrigation districts and then concludes from that that an "irrigation entity's" determination to grant or deny permission for an encroachment or to demand removal of an encroachment is subject only to limited review. This appears to grant solely private companies and associations the same rights as an irrigation district. Such limited review is premised on the critical nature of the irrigation entity's duties and the potential for liability for failure to carry out such duties. What other quasi-governmental entities will be entitled to a deferential standard of review under this decision? Does this principle, for instance, pertain to decisions made by fire districts? They carry out critical duties and face potential liability for failing to do so.

And, if a non-governmental irrigation entity is entitled to deferential review for decisions made pursuant to I.C. § 42-1209, does that same deference apply to decisions made by all other landowners holding a right of way for an irrigation ditch under I.C. § 42-1102? Section 42-1102 was amended by the same legislation that enacted the new I.C. § 42-1209 to include essentially the same language as that new section. 2004 Idaho Sess. Laws, ch. 179, p. 561. Furthermore,

15

what other statutes pertaining to irrigation districts entail a limited right of judicial review? Are the decisions of an irrigation entity relating to the maintenance and operations of canals and ditches across the land of another pursuant to I.C. § 42-1204 subject to limited review? If limited review applies to decisions made under I.C. § 42-1209, we can certainly anticipate that irrigation entities will assert that they are entitled to deferential review of decisions they make pursuant to other statutes.

There is some rationale for providing limited review of some decisions made by true government bodies. First, those entities must observe a number of procedural safeguards in their decision-making process. Persons who may be aggrieved by governmental decisions have statutory rights to notice, a meaningful opportunity to be heard, a record of the proceedings, findings of fact and a reasoned decision by the decision-making body, and the like. *See, e.g.*, I.C. § 67-5242. There are no such statutory procedures governing the decision-making process of irrigation districts or private irrigation entities such as Carey Act operating companies. Second, the decisions of true government agencies are subject to review by voters at the ballot box. If county commissioners or city councilmen make what the voters perceive as a bum decision, the voters can throw the bums out. However, irrigation districts are not necessarily subject to the same political scrutiny as municipal corporations. That is, leaders of cities and counties are beholden to their entire voting population—landowners and non-landowners alike. But irrigation district elections may be closed to non-landowners. I.C. § 43-111. Accordingly, irrigation district board members may be beyond the reach of non-landowners within the district.

The potential for an irrigation district's board to lack political accountability necessitates a more thorough judicial review of its decisions. In the context of cities or counties, it makes sense that we give elected leaders leeway in their decision-making. But with an irrigation district, it is quite possible that the district's board could make decisions that affect the interests of people with no political recourse. The same is true for the other types of water-delivery entities covered by I.C. § 42-1209, like a Carey Act company, which have no political oversight. We defer to decision-makers with some skin in the political game because our constitutional separation of powers assumes the democratic process will temper unwise choices. *See Miles v. Idaho Power Co.*, 116 Idaho 635, 640, 778 P.2d 757, 762 (1989) (recognizing that certain questions are reserved to the political branches of government). When, however, decision-makers lack political accountability, we should not grant undue deference to their decisions.

16

It seems to me that the Court should either require any right of limited review to be specifically spelled out in a statute, such as the Legislature has done in instances where it desires limited review, or this Court should exercise its inherent "power to fashion the procedures necessary to perform [its] duties." *City of Boise v. Ada County*, 147 Idaho 794, 802, 215 P.3d 514, 522 (2009). In doing so, we should specify the decision-making procedure that must be employed by the irrigation entity in order to qualify for limited review. That is, we should require procedural mechanisms, perhaps comparable to those specified in I.C. § 67-5242, in order to ensure the due process rights of the adverse party and a reviewable record on appeal. Leaving it to an irrigation entity to determine what type of procedure to employ seems to be risky, at best.[6]

I read I.C. § 42-1209 to merely define the rights of water-delivery entities with respect to their irrigation easements. The entities covered by I.C. § 42-1209 have the right to permit or deny encroachments on their rights of way in the first instance, and the courts are tasked with evaluating the entity's decision by determining whether an encroachment is, or would be, unreasonable or would materially interfere with the entity's use of the easement. Under this reading, an entity seeking the removal of an encroachment would file a civil action, and if the court determined the encroachment unreasonable or a material interference, the encroaching party would bear the responsibility and costs of removal. If urgent action is necessary, the irrigation entity may seek immediate injunctive relief.

It does not appear that either irrigation districts or other irrigation entities need to have the additional benefit of limited review of their decisions in order to carry out their important responsibilities. After all, I.C. § 42-1209 clearly gives them the upper hand in dealing with unwarranted encroachments. The very existence of the statute would give the potential encroacher pause in placing an encroachment on a right of way. The statute gives the irrigation entity a leg up in enforcement proceedings in court. Adding the element of deferential review, which the Legislature did not see fit to do, would overly gild the lily.

My primary concern about giving this extra benefit to irrigation entities is that it may distort the litigation process where outside parties have legitimate rights to encroach upon, or have the right to cause runoff into, canals or ditches. Pioneer recognizes that some of the runoff

---

[6] The record does not indicate whether Pioneer employed any particular decision-making process in determining the encroachments that constituted transgressions of its rights under I.C. § 42-1209 in this case, or what procedure it intends to pursue in the future to make such a determination.

17

water it wishes to preclude from draining into its ditches and canals has historically drained in such a manner. Some of the runoff it wishes to prevent is from those who hold water rights in the district. In a position statement contained in the record, Pioneer states:

> [Caldwell's storm water runoff] should not be drained through existing irrigation drainage facilities even if the post development land proposed for such drainage is land that used to be historically drained in such a manner. Existing irrigation drainage facilities were designed to drain excess water from undeveloped agricultural lands and were not designed, constructed and/or not maintained to accept storm water runoff from developed lands.

Thus, Pioneer seeks to obtain limited review of its decisions that may well impact established runoff or flowage rights. This is not a matter where Pioneer should go into court with the deck stacked in its favor. If deference has to be accorded to decisions it makes vis-à-vis existing rights of others, it will likely prevail in instances where it should not.

Nor does I.C. § 42-1209, in and of itself, authorize any right of self-help. As the Court points out, I.C. § 42-1209 is silent with respect to abatement. Courts, not water-delivery entities, should have the responsibility of determining the reasonableness, or lack thereof, of an encroachment. If a court finds that a party has unreasonably encroached on an easement, then the court can craft an appropriate remedy, consistent with I.C. § 42-1209. Furthermore, when the Legislature wishes to give parties a self-help or abatement remedy, it says so. *See, e.g.*, I.C. §§ 52-202 and 52-301 (providing an express abatement remedy for private and public nuisances, in addition to civil and, in the case of public nuisances, criminal remedies).

The Court cites the Court of Appeals' decision in *Carson v. Elliott*, 111 Idaho 889, 728 P.2d 778 (Ct. App. 1986), for the proposition that an easement owner is entitled to resort to self-help to remove obstacles that unreasonably restrict the enjoyment of easement rights. The Court of Appeals notes that easement owners have certain common law rights to resort to self-help, where it can be accomplished without a breach of the peace. Nothing in I.C. § 42-1209 restricts or enhances any such common law right. The point is that the statute does not address the issue of self-help in any way and certainly does not grant a self-help remedy.

For the foregoing reasons, I would vacate the district court's entire summary judgment order.

Chief Justice BURDICK CONCURS.

18